# ORIGINAL

1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF LOUISIANA

3                 ALEXANDRIA DIVISION

4          * * * * * * * * * * * * * * * * * * *

5

BOBBIE N. HINSON

6

VS.                        CIVIL ACTION NO. 1:16-CV-1009

7

CONCORDIA PARISH

8  SCHOOL BOARD

9          * * * * * * * * * * * * * * *

10                DEPOSITION OF

11                 PAUL NELSON

12                July 18, 2017

13          * * * * * * * * * * * * * * *

14

15      At:

16          Concordia Parish School Board
           4358 Highway 84
17          Vidalia, Louisiana 71373

18              REPORTED BY:

19              LINDA PEROT
               CERTIFIED COURT REPORTER
20              CERTIFICATE NO. 23012
               STATE OF LOUISIANA

21

22

23

24

25

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    1 of 102

```
 1     APPEARANCES:

 2     FOR PLAINTIFF BOBBIE N. HINSON:

 3          BREITHAUPT, DUNN, DuBOS, SHAFTO & WOLLESON
            1811 Tower Drive, Suite D
 4          Monroe, Louisiana 71201
            Telephone:  (318) 322-1202
 5
                 appearing herein by and through
 6               Mr. K. Lamar Walters, III
                 E: Mail:  lwalters@bddswlaw.com
 7

 8
       FOR DEFENDANT CONCORDIA PARISH SCHOOL BOARD:
 9
            HAMMONDS, SILLS, ADKINS & GUICE
10          1881 Hudson Circle
            Monroe, Louisiana 71201
11          Telephone:  (318) 324-0101
            E-Mail:  njohnson@hamsil.com
12
                 appearing herein by and through
13               Mr. Neal L. Johnson and
                 Mr. Justin Myers
14

15

16

17

18

19

20

21

22

23

24

25
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                               2 of 102

```
 1            WITNESS:
 2                 Well, my cell number is not -- it's not the
 3            same one that I had when I was here.
 4            MR. WALTERS:
 5                 Okay, well, can you give me the --
 6            WITNESS:
 7                 So, it's a private number --
 8            MR. WALTERS:
 9                 That's fine.
10    Q    Can --
11            WITNESS:
12                 -- and I'm not giving it to you.
13    Q    -- you give me the cell number you had when you were
14         here?
15    A    The one that was here was 719-5611.
16    Q    And who was the service provider for that?
17    A    The school board's provider was Verizon.
18    Q    Right.  Did you send text messages related to work or --
19    A    At times, of course.
20    Q    Did you ever text Bobbie Hinson about anything related
21         to work?
22    A    I'm sure I did.  I don't remember any specifics, but I
23         would imagine we did, and we'd text the supervisors and
24         principals on a regular basis about work issues.
25    Q    Okay.  What's the highest degree you've obtained?
```

## Linda Perot, CCR

11

```
 1    A    Ph.D.

 2    Q    Let's start with your Bachelor's degree.  Where did you

 3         get that?

 4    A    University of Southern Mississippi.

 5    Q    And what year was that?

 6    A    1990.

 7    Q    Bachelor of Arts or Bachelor of Science?

 8    A    Bachelor of Science.

 9    Q    And then following that, did you get a Master's degree?

10    A    I got a Master's degree in 1992 for USM.

11    Q    And what was that in?

12    A    That was in Curriculum and Instruction.

13             COURT REPORTER:

14                   Was in what?  I'm sorry.

15             WITNESS:

16                   Curriculum and Instruction.

17    Q    All right.

18    A    And I received a Specialist in 1996 from NLU,

19         Educational Administration.

20    Q    And then tell me what that is, a "Specialist"?  What is

21         that?

22    A    It's a degree midway between a Doctorate and a Master's.

23    Q    And that was just in education, generally?

24    A    That was in Educational Administration.

25    Q    And then the Ph.D. was what?
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    4 of 102

1    A    In Leadership from University of Mississippi.

2    Q    And what year was that?

3    A    2002, I believe.

4    Q    And if you would, take me through where you were

5         employed in any capacity as an educator, whether it was

6         while you were in school or after you completed school,

7         starting from your first educational position on.

8    A    I was a teacher in 1990, '91 at Hancock High School in

9         Kiln, Mississippi, home of Brett Farve.  I was at

10        Raceland Junior High in '92 to '94.  I was at Monterey

11        from '94 to '98 -- or '97-'98, I think.  I was Assistant

12        Principal of Vidalia Junior High in '98 to 2003.

13        2003-2004, I was the principal at Vidalia Lower.  2003

14        to 2006, I was the principal at Vidalia Junior High.

15        2006 to 2012, I was the Director of Academic Programs

16        here at Concordia Parish.  2012,  I became

17        Superintendent of the School.

18    Q    So, 2012 through what day were you Superintendent?

19    A    I was super- -- I was here til December of '15 in an

20        active role.  I was consultant for the spring semester

21        of 2016.  And July 1st, 2016, I became Superintendent of

22        the Tensas Parish School System.

23    Q    So -- and I'm sorry, after December 2015 when your

24        position of Superintendent of Schools here in Concordia

25        Parish ended, what happened at that point?  Where did

### Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

| | | |
|---|---|---|
| 1 | | you go? |
| 2 | A | I still was employed by the school system for -- as a |
| 3 | | consultant. |
| 4 | Q | Through July 1st of '16? |
| 5 | A | That's correct.  Or June 30th. |
| 6 | Q | Okay. |
| 7 | A | I don't know how you want to slice it. |
| 8 | Q | And what did you do in that consulting capacity? |
| 9 | A | I was available for anything that the Board or the |
| 10 | | Superintendent may require. |
| 11 | Q | And who took over as Superintendent after you left in |
| 12 | | December of -- |
| 13 | A | Loretta Blankenstein was appointed interim when I left. |
| 14 | Q | December 2015 would have been right in the middle of the |
| 15 | | school year.  Is that correct? |
| 16 | A | Yes. |
| 17 | Q | What happened that you ceased being the Superintendent |
| 18 | | at Concordia Parish School Board in December of 2015? |
| 19 | A | Difference of opinion with the Board. |
| 20 | Q | And what was that related to, the difference of opinion? |
| 21 | A | Micromanagement by the board members. |
| 22 | Q | And specifically which board members did you have -- or |
| 23 | | were you at odds with about micromanagement? |
| 24 | A | A number. |
| 25 | Q | And who was that, in particular? |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                    6 of 102

1    A    Well, I mean, you had -- you had Rickey Raven.  You had

2         Ronnie Bradford.  You had a number of them.  It's a

3         difference of opinion where everyone felt the best thing

4         was to move different directions.

5    Q    And in particular, what was the difference of opinion

6         about?  You said "micromanagement," but micromanagement

7         of what?  Was it the way you were handling the staff at

8         the schools or --

9    A    No.  It could be about if the sky is green or the sky is

10        blue.

11   Q    But that doesn't have anything to do with education, so

12        what about education?

13   A    Neither did a lot of what they asked about.

14   Q    What's that?

15   A    Neither did a lot of what they inquired about.

16   Q    And then -- that's what I'm trying to get to the bottom

17        of.  What in particular were the disagreements about

18        that led to you --

19   A    We had disagreement about paving a parking lot.  We had

20        a disagreement about the supervisor here's relationship

21        with maintenance workers.  We had disagreements about

22        how principals handled certain issues.  We had issues

23        about how certain coaches handled certain players, how

24        certain teachers taught what they taught, how certain

25        administrators talked to parents.

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                                    7 of 102

| | | |
|---|---|---|
| 1 | Q | So, it sounds like there were not a whole lot of things |
| 2 | | that you and the board members did agree on at the time |
| 3 | | that you left in December of 2015.  Would that be |
| 4 | | accurate? |
| 5 | A | Perhaps.  There's nine of them.  You'd have to ask them. |
| 6 | Q | Well, you mentioned Rickey Raven and Bonnie Bradford. |
| 7 | | Who else were you -- |
| 8 | A | Ronnie. |
| 9 | Q | -- having disagreements with? |
| 10 | A | It would depend on the issue.  I mean, part of the other |
| 11 | | side of it was that I was in the middle of divorce.  My |
| 12 | | wife was very vocal causing a lot of problem in the |
| 13 | | community, and that -- that didn't help the situation |
| 14 | | any.  So, every time that she would do something, then |
| 15 | | all of a sudden we'd find a problem with the time that |
| 16 | | the lunch was delivered or when the grass was mowed |
| 17 | | or -- |
| 18 | Q | Was your wife employed by the school board? |
| 19 | A | Yes, she was. |
| 20 | Q | In what capacity? |
| 21 | A | She was a teacher. |
| 22 | Q | And what was her name? |
| 23 | A | Karen Nelson. |
| 24 | Q | And so, were you asked to leave as Superintendent of the |
| 25 | | School Board in December 2015? |

## Linda Perot, CCR

16

```
 1    A    We agreed to separate.

 2    Q    Okay.

 3    A    It was a mutual decision.

 4    Q    Well, is that something that you brought to them or did

 5         they ask you --

 6    A    They asked me if I was interested in it.

 7    Q    Okay.

 8    A    And at that point, yeah.

 9    Q    Was that a meeting that was held behind closed doors?

10    A    It's a personnel meeting; so, yes.

11    Q    Was not something that was discussed or brought up for a

12         vote at the school board meeting?

13    A    Well, there's minutes that reflect that they -- I guess

14         the separation agreement or whatever would have been

15         prepared by Jon Guice at the time -- pardon me, between

16         Jon Guice and Marc Boullier.

17    Q    Were you paid a severance?

18    A    I was paid as a consultant until June 30th, 2016.

19    Q    Did part of the -- the agreement prepared by Jon Guice,

20         or whomever counsel was for the school board at that

21         time, include any provision about you keeping any

22         matters quiet or secret or confidential?

23    A    Well, the agreement was is that neither side was going

24         to be -- there wasn't going to be a lot of negative.  We

25         didn't want negative connotations for the system.
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                    9 of 102

1    Q    Okay.

2    A    So --

3    Q    So, there was a --

4    A    But I don't know there -- I wouldn't say that there was

5         a written agreement to that effect.  I think it's more

6         of a gentleman's agreement that I'm not going to go out

7         and bad mouth you, you don't go out and bad mouth me

8         type situation would be how I'd describe it.

9    Q    Did the school board maintain a copy of that?  Did you

10        have a contract that you had to sign when you left the

11        school board?

12   A    Yes, I did.

13   Q    And the school board maintains a copy of that in their

14        office?

15   A    You'd have to speak to them.  I don't know.

16   Q    Okay.

17   A    I'm not quite sure how that deals with what we're here

18        for, but -- because that sounds like a personal matter.

19        That's a personal matter and I have a right to privacy

20        and confidentiality, I think.

21   Q    And the school board was required to keep you on as a

22        consultant pursuant to your agreement until June 30th,

23        2016.  Is that right?

24   A    That was the agreement, yes.

25   Q    Was the school board receiving any pressure from the

# Linda Perot, CCR

18

| | | |
|---|---|---|
| 1 | | community to have you transferred or moved or was this |
| 2 | | more of a school board -- |
| 3 | A | This was -- |
| 4 | Q | -- issue? |
| 5 | A | To my knowledge, it's more of an individual school board |
| 6 | | member issue. |
| 7 | Q | Who were the school board members as of the 2014-15 |
| 8 | | school year? |
| 9 | A | It's the same Board that's currently in place. |
| 10 | Q | And, if you would, list those for me.  I think you've |
| 11 | | mentioned Rickey Raven and Ronnie Bradford.  Is that |
| 12 | | correct? |
| 13 | A | Ronnie Bradford. |
| 14 | Q | Ronnie Bradford.  I'm sorry. |
| 15 | A | Let's see, you have Warren Enterkin, Mary Campbell, Fred |
| 16 | | Butcher, Ronnie Bradford, Raymond Riley, Cheryl Probst, |
| 17 | | Rickey Raven, John Bostic.  I think that's nine. |
| 18 | Q | And as the Superintendent of the Concordia Parish School |
| 19 | | System, what were your job duties? |
| 20 | A | To oversee the administration of the system. |
| 21 | Q | And more specifically, what did that oversight entail? |
| 22 | A | That included supervision of all six hundred-plus |
| 23 | | employees, appointment of all employees, approval of all |
| 24 | | leaves for all employees, oversight of all budgetary |
| 25 | | issues, all purchases, contracts, agreements, general |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                              11 of 102

```
 1        operations of the schools, general maintenance of the

 2        schools, operation of the transportation system,

 3        oversight of all technology purchases, purchasing the

 4        books.

 5   Q    And is it -- are the job duties the same at Tensas

 6        Parish now in your role as Superintendent there?

 7   A    Yes.  I would say so.  The job description for

 8        superintendent is pretty standard.

 9   Q    Now, where are the -- we'd requested some information

10        about job descriptions and job duties for different

11        positions, but I did not see that in the documents

12        produced by Concordia Parish School Board.  What

13        documents specifically list the job duties for different

14        positions?

15   A    There should be a manual here that has job duties of all

16        employees.

17   Q    Okay.

18   A    And their position.  So, there's a job description for a

19        principal.  There's a job description for supervisor of

20        special ed.  There's a job description for maintenance

21        supervisor, business manager, teacher, counselor, so on,

22        so forth.  Where they are, I have no idea.  As you know,

23        I don't work here.  You'd have to speak to someone else.

24   Q    Okay.

25   A    At one time they were maintained on the website but the
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    12 of 102

```
 1        website may have been updated since then.  They're
 2        public records.
 3    Q   Now, what were the different schools that you oversaw in
 4        Concordia Parish as Superintendent?
 5    A   We had eleven different schools.
 6    Q   If you would, list those for me.
 7    A   Vidalia Lower, Vidalia Upper, Vidalia Junior, Vidalia
 8        High School, Concordia Parish Academy of Math, Science
 9        and Technology, Ferriday Lower, Ferriday Upper, Ferriday
10        Junior, Ferriday High, Concordia Education Center and
11        Monterey High School.
12    Q   Now, in your capacity as Superintendent, you were
13        employed by the Concordia Parish School Board, but were
14        not an actual member on the Board.  Is that correct?
15    A   That's correct.
16    Q   Did you have to report to the Concordia Parish School
17        Board when a change in a person's employment status was
18        made?
19    A   They were made every month, as well as periodically
20        during the month through the books not as an FYI.  In
21        the event that someone had decided to retire, resign, so
22        forth.  They were notified.
23    Q   And by what means did you send notifications about the
24        different employee transfers, retirements, hirings to
25        the school board?
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                          13 of 102

1   A    We try to look at experience.  We try to look at

2         temperament.  We try to look at meshing the needs of the

3         school, needs of the faculty, experience.  Junior high

4         principals needs to be very aggressive and assertive

5         with discipline because junior high kids tend to be very

6         rambunctious at times and need a firm hand.

7   Q    So, just in a broader sense, qualification for the

8         position is one of the primary things you look for.  Is

9         that correct?

10  A    That's correct.

11  Q    How many full-time employees did Concordia Parish School

12        Board have working for it during the 2014-2015 school

13        year; and then, on into the 2015-2016 school year?

14  A    I would say somewhere in the neighborhood of six

15        hundred.

16  Q    And was there much variation between the number of

17        full-time employees at each specific school within the

18        Concordia Parish School Board?

19  A    It varied by -- by how large the student -- how large

20        the school was, based on student count.  We began to try

21        to reduce staff in '14 and '15 because of budgetary

22        reasons.  We were losing over a million dollars to the

23        Delta Charter School through lost enrollment; and so, as

24        schools lost enrollment, they lost staff members.

25  Q    Now, for the 2014-2015 school year, Ms. Hinson -- Bobbie

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

```
 1   Q    All right.

 2   A    Yes.

 3   Q    And that would be the same with, for instance,

 4        Ms. Smith -- Cindy Smith, with respect to the elementary

 5        schools?  Would she go to each one every week or attempt

 6        to?

 7   A    You'd have to ask her, but part of the goal of both the

 8        directors in our Special Ed -- in our Director of

 9        Federal Program was to be out schools to be visible, and

10        also be there to try to assist with situations that may

11        come up.  So I would think that would be reasonable that

12        yeah, she would be -- she would try to be at all six of

13        the elementary schools on a regular basis.

14   Q    And Rhonda Moore, you mentioned, was one person that

15        would deal with medical leave requests and other medical

16        issues involving staff,  And then Gloria --

17   A    Dangerfield.

18   Q    Gloria Dangerfield would also occasionally deal with

19        those issues?

20   A    Right.

21   Q    Would they report about those issues to you as their

22        supervisor?

23   A    They would bring those types of issues to me for

24        approval or for discussion, depending on the situation.

25   Q    As superintendent, were you aware in June of 2014 that
```

# Linda Perot, CCR

30

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    15 of 102

1        Ms. Hinson underwent surgery on her left foot?

2   A   Not specifically, no.

3   Q   Did you become -- or did you receive any reports about

4        any medical conditions that Ms. Hinson was dealing with

5        during the 2014-2015 school year from either Cindy

6        Smith, Rhonda Moore or Gloria Dangerfield?

7   A   It depends on what time of the year you're asking the

8        question.

9   Q   Well, let's start -- let's start during the summer

10       preceding the 2014-2015 school year.  Was there any

11       communication to you about any medical issue or

12       condition that Ms. Hinson was dealing with prior to

13       school assuming -- or commencing for the 2014-15 school

14       year in August?

15   A   I remember being told that she had surgery on her foot

16       and that she was going to be out a little bit, would not

17       be able to report til a little bit later for the regular

18       report date.  And then, when school year started, she

19       was -- I mean, when we started to come back to school

20       and have our meetings and get underway, she was there.

21   Q   And who informed you that she would not be able to

22       report at the regular report date and prior to the

23       2014-15 year?

24   A   I'm not sure.  Either Rhonda or Cindy.

25   Q   And then, what would the typical report date for an

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

| 1  |   | elementary principal be? |
|----|---|---|
| 2  | A | All principals would report to approximately twenty days |
| 3  |   | before teachers would report; so, depending on the |
| 4  |   | school calendar, you would just backdate the number. |
| 5  |   | Generally, by the last week of July -- well, actually in |
| 6  |   | many cases, say this week, 17, 18th, 20th of July, |
| 7  |   | depending on the year. |
| 8  | Q | And so you were advised that Ms. Hinson wouldn't report |
| 9  |   | by that date for the 2014-15 school year, July 17th |
| 10 |   | through 20th, roughly, but she did report or she did |
| 11 |   | make it back to start the school year.  Is that correct? |
| 12 | A | That's -- uh-huh. |
| 13 | Q | Okay.  And -- |
| 14 | A | Yes. |
| 15 | Q | -- when would that typically commence? |
| 16 | A | It'd depend on the school year.  Anywhere between the |
| 17 |   | eighth and the 12th of the year. |
| 18 | Q | Of August? |
| 19 | A | Of August, yes. |
| 20 | Q | And so, you made trips to Ferriday Lower Elementary |
| 21 |   | every week or other week, roughly, during the 2014-15 |
| 22 |   | school year.  Is that correct? |
| 23 | A | Yes. |
| 24 | Q | And so, you saw the condition that Ms. Hinson's foot was |
| 25 |   | in as she returned at that time.  Is that correct? |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7674 acourtreporter2@gmail.com

Exhibit 2                                                    17 of 102

| 1  | A | Well, she had a boot on -- |
| 2  | Q | Okay. |
| 3  | A | -- just like other employees have had. |
| 4  | Q | And during the course of that year, as you continued to |
| 5  |   | go to the school, how long did Ms. Hinson wear that |
| 6  |   | boot, to your recollection? |
| 7  | A | I don't recall. |
| 8  | Q | Do you recall her ever not having that boot during the |
| 9  |   | course of the 2014-15 ?? |
| 10 | A | Yeah.  I mean, eventually.  She didn't have it on the |
| 11 |   | entire school year. |
| 12 | Q | Okay. |
| 13 | A | But I'm not sure when she stopped wearing it.  It didn't |
| 14 |   | seem to be interfering with her operation of the school |
| 15 |   | at the time. |
| 16 | Q | And what were her duties as the principal of Ferriday |
| 17 |   | Lower Elementary? |
| 18 | A | Well, she would be responsible for making |
| 19 |   | recommendations about the hiring and firing of staff. |
| 20 |   | She'd be in charge of making the schedule for the |
| 21 |   | school.  She'd be involved in curriculum decisions for |
| 22 |   | the school, textbook purchases, software purchases. |
| 23 |   | She'd be responsible for overseeing the general |
| 24 |   | maintenance and operation of the school. |
| 25 | Q | And skipping ahead a little bit, after your |

# Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                                                 18 of 102

```
 1              recommendation or after your transfer of Ms. Hinson to

 2              Ferriday Junior High, what would her duties there

 3              consist of?

 4    A         The same thing.

 5    Q         Was there any difference between what was required of a

 6              principal at Ferriday Junior High and Ferriday Lower

 7              Elementary?

 8    A         Difference in age group.  Difference in the fact that

 9              you have football and basketball.  The length of the

10              school day's the same, the length of the school year,

11              the same.

12    Q         And why were the requirements different in relation to

13              the football and basketball?

14    A         Because the lower elementary does not have those.

15    Q         And what did that require of Ms. Hinson as principal?

16    A         To be there, to be visible, to oversee.

17    Q         During the entire football and basketball season?

18    A         They're both over by December.

19    Q         When does football season start?

20    A         Roughly, September through October.  And basketball is

21              October through early December.

22    Q         Do those overlap at all?

23    A         Generally, no.  Usually, you have three to four home

24              games for football, six to seven for basketball.

25    Q         And in terms of away games, is the principal required to
```

## Linda Perot, CCR

34

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    19 of 102

```
 1              attend those, as well?

 2        A     No.

 3        Q     And in terms of the supervision at the football and

 4              basketball games, what does the principal do during the

 5              time that --

 6        A     It depends on the principal.  Some principals take up

 7              money and sit at the front door.  Some principals sit on

 8              the edge of the stage and watch the football game.  Some

 9              principals run the concession stand.  Some principals

10              sit in the stands.

11        Q     The principal is -- is the principal required to

12              supervise the students while --

13        A     They're required --

14        Q     -- throughout the game?

15        A     -- to be there to supervise the entire event.

16        Q     And I would assume that requires the principal to be

17              mobile.  Is that correct?

18        A     Well, typically -- the principal can be.  Principals

19              typically have police officers and other faculty members

20              there.  In the case of Ferriday Junior High, we would

21              have been paying for four SRO's to be there.

22        Q     What are SRO's?

23        A     School resource officers.

24        Q     What other extracurricular activities would Ferriday

25              Junior High Have that Ferriday Lower Elementary would
```

## Linda Perot, CCR

35

Exhibit 2                                    20 of 102

```
 1        in Connecticut and other places around the state from
 2        2012 forward.
 3   Q    Which would be that much more reason for a principal not
 4        to just be sitting in the stands dormant at these type
 5        of events, but to be moving around, interacting,
 6        observing?
 7   A    Well, they should be doing that at school.
 8   Q    Okay.  I'm sorry, what's that?
 9   A    They should be doing that at their schools.  That's not
10        just a -- a task that's oriented to sports events.  They
11        should be doing that at their school on a regular basis.
12   Q    And I understand.  I'm just talking about just at the
13        sporting events.  That's something you would expect out
14        of your principal?
15   A    I'd expect him to be there and be visible and I'd expect
16        him to be communicating with the staff that's there,
17        including the police officers.  But, like I said, in
18        some cases, school principals work the clock, and that's
19        what they do.  It just depends.
20   Q    Did you ever advise Ms. Hinson that she could go merely
21        sit down in a chair and work the clock at any
22        extracurricular event?
23   A    We never had that discussion.
24   Q    Did you ever tell her that she could simply assign other
25        people to do the supervision activities at the
```

## Linda Perot, CCR

| 1 | | extracurricular event? |
|---|---|---|
| 2 | A | We never had a specific discussion. |
| 3 | Q | So, no as to both of those.  Is that correct? |
| 4 | A | That's correct. |
| 5 | Q | When Ms. Hinson expressed concerns to you about engaging |
| 6 | | in the extracurricular activities upon transfer to |
| 7 | | junior high, did you ever attempt to assure her that she |
| 8 | | would not have to be mobile or that she could assign |
| 9 | | those duties to other people? |
| 10 | A | Ms. Hinson's comment to me was that she was not going to |
| 11 | | do it, period. |
| 12 | Q | Okay. |
| 13 | A | So, there was no discussion about any of this other.  It |
| 14 | | was simply, "I'm not going to do it." |
| 15 | Q | When she told you that she was uncomfortable with it -- |
| 16 | | and she eventually told you that she was uncomfortable |
| 17 | | with it because of her medical condition.  Correct? |
| 18 | A | I believe some time after she had been moved she sent a |
| 19 | | letter or a e-mail several weeks after she had been |
| 20 | | transferred, something to the effect about -- about her |
| 21 | | foot; but, by that time, I had already approved her to |
| 22 | | be on medical leave. |
| 23 | Q | And we'll get to that in a minute.  But she sent you |
| 24 | | that e-mail before her transfer became effective.  Isn't |
| 25 | | that correct? |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                   22 of 102

```
 1    A    They would have been notified of their transfer before,
 2         as I recall.
 3    Q    Now, were you made aware by Ms. Smith about Ms. Hinson
 4         participating in physical therapy on an ongoing basis
 5         during the 2014-2015 school year?
 6    A    I knew that she was out at times to go to therapy, but I
 7         wasn't sure of the regularity or how often.
 8    Q    Were you aware that Ms. Hinson had to miss days to go to
 9         Baton Rouge to see her physician about her foot?
10    A    I knew she had been out a couple of times to go to the
11         doctor, but that's not all that uncommon.
12    Q    Did you understand that that was in relation to her
13         foot?
14    A    No, I did not.
15    Q    Did you inquire about that?
16    A    No, I did not.  I entrust employees to make decisions
17         that are proper and appropriate.  Ms. Hinson was a
18         principal.  She's a self-reporter in her absences.
19    Q    Now, were Rhonda Moore's duties solely related to
20         dealing with the medical issues for --
21    A    Rhonda Moore --
22    Q    -- staff?
23    A    -- was personnel coordinator.
24    Q    And what does that mean?  What does that entail?
25    A    That means anything that deals with personnel or
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                23 of 102

| | | |
|---|---|---|
| 1 | | I believe, Melissa Loche from Hammonds and Seals. |
| 2 | Q | Okay. |
| 3 | A | So, I would imagine that this is as a result of that |
| 4 | | conversation that she and I had. |
| 5 | Q | Okay.  Now, what was it that, in particular, qualified |
| 6 | | Ms. Hinson for her position as principal of Ferriday |
| 7 | | Lower Elementary?  And I realize you didn't appoint her |
| 8 | | to that position; but, obviously, you kept her there for |
| 9 | | a period of time.  So, what about her qualifications |
| 10 | | made her qua- -- or her credentials made her qualify to |
| 11 | | do that job? |
| 12 | A | Well, she was certified to be a principal and she was |
| 13 | | already in position there, you know, when I came to the |
| 14 | | superintendent's office. |
| 15 | Q | And then you felt like she was qualified also to be |
| 16 | | principal of Ferriday Junior High School, which would be |
| 17 | | a group of older kids.  Is that correct? |
| 18 | A | That is correct. |
| 19 | Q | Okay. |
| 20 | A | Based on her experience and the toxic environment at the |
| 21 | | Ferriday Lower, I thought the move was good. |
| 22 | Q | Now, did you ever -- let's see, you'd agree that |
| 23 | | Ms. Hinson displayed excellent performance at Ferriday |
| 24 | | Lower Elementary School, would you not? |
| 25 | A | In some aspects. |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                                 24 of 102

| | |
|---|---|
| 1 | be is how -- what -- how is the goal determined?  How do |
| 2 | you set the goal?  If you set your own goal, do you set |
| 3 | a goal that you can attain?  Do you set a goal that you |
| 4 | can't attain?  That's why it's subjective. |
| 5 | Q   And Ms. Hinson exceptionally attained those goals.  Is |
| 6 | that correct -- at Ferriday Lower Elementary for the |
| 7 | 2012-2013 school year? |
| 8 | A   That's what the document says. |
| 9 | Q   And there's no evidence anywhere that suggests that the |
| 10 | document is wrong.  Is there? |
| 11 | A   Not that I'm aware. |
| 12 | MR. WALTERS: |
| 13 | I'm going to show you a document that's marked |
| 14 | as Exhibit 8. |
| 15 | Q   And this document, at the top, it's marked -- or it's |
| 16 | entitled, "Louisiana Department of Education, Compass |
| 17 | Information System, Compass Evaluation Report," and it's |
| 18 | for school session 2013-2014.  So, this is an evaluation |
| 19 | report that is issued by the Louisiana Department of |
| 20 | Education.  Is that correct? |
| 21 | A   No, it's not. |
| 22 | Q   Why does it say "Louisiana Department of Education" at |
| 23 | the top? |
| 24 | A   Because that's where the information is housed.  Her |
| 25 | evaluator inputs the data. |

## Linda Perot, CCR

56

| | | |
|---|---|---|
| 1 | Q | Okay. |
| 2 | A | And she inputs certain aspects of it, as well. |
| 3 | Q | The evaluator on this report would, again, be Cynthia |
| 4 | | Smith, the Director of Elementary Education that you |
| 5 | | appointed to oversee principals like Ms. Hinson.  Is |
| 6 | | that correct? |
| 7 | A | Yes. |
| 8 | Q | And Ms. Hinson's overall evaluation rating is highly |
| 9 | | effective at 3.68 out of 4.0.  Is that correct? |
| 10 | A | Yes. |
| 11 | Q | There is no ranking higher than highly effective on this |
| 12 | | evaluation report, is there? |
| 13 | A | No, there's not. |
| 14 | Q | Now, "Professional Practice Comments" from Ms. Smith on |
| 15 | | page one, she states that "Ms. Hinson is working hard to |
| 16 | | improve the instructional program at FLE.  Teachers are |
| 17 | | focusing on data and student performance, which is a |
| 18 | | huge step in the right direction.  As the state |
| 19 | | assessments change, the instruction in the classroom |
| 20 | | will have to reflect the same changes.  Ms. Hinson is |
| 21 | | very capable of leading the teachers through the changes |
| 22 | | necessary to improve school performance.  There will |
| 23 | | always be resistance, but strong leadership will find |
| 24 | | ways to unite the faculty so that teachers encourage |
| 25 | | each other to stay focused."  So, at this point, |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    26 of 102

1       Ms. Smith is noting in her comments that, no matter

2       what, there's going to be resistance from teachers as

3       things change at the school.  Is that correct?

4   A   That's what she's saying.

5   Q   So, that's expected.  You expect that to happen.  No

6       matter what principal you have and what teachers you

7       have, it's not always going to be harmonious.  Isn't

8       that true?

9   A   It's not always going to be, but there are different

10      levels of harmony.

11   Q   Now, Ms. Hinson's final evaluation report --

12         MR. WALTERS:

13           -- and I'm going to mark this as Exhibit 9 --

14   Q   -- was not completed by Cindy Smith.  It was completed

15      by you.  Isn't that correct?

16   A   Yes.

17   Q   And if we look from Exhibit 9 to Exhibit 8, the

18      evaluation report from the year prior, Ms. Hinson's

19      overall evaluation rating actually improved from 3.68 to

20      3.72.  Isn't that correct?

21   A   That is.

22   Q   Her overall professional practice rating improved from

23      3.36 to 3.43.  Isn't that correct?

24   A   Yes.

25   Q   And nowhere on this document, as of the completion of

**Linda Perot, CCR**

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

```
 1        you have problems at one position and you have problems
 2        at another position and you have somebody who has
 3        experience, who has a very assertive aggressive
 4        personality, who has experience at the junior high, it
 5        seems to me that that would be the move to make.
 6    Q   How far removed was Ms. Hinson from experience at the
 7        junior high level?
 8    A   I'm not sure.  Probably had been fifteen or twenty
 9        years, maybe.
10    Q   And who was the principal at Ferriday Junior High that
11        was being removed from that position?
12    A   Arlana Davis.
13    Q   And where was Arlana Davis being transferred to?
14    A   To Ferriday -- Vidalia Lower.
15    Q   And did Arlana Davis have any kind of health condition
16        or anything like that when you moved her into Ferriday
17        Lower Elementary?
18    A   When I moved her to Vidalia Lower?
19    Q   I'm sorry, Vidalia Lower Elementary?
20    A   Not that I'm aware of.
21    Q   Any kind of health restriction or anything like that
22        that would prevent her from doing any activity?
23    A   Not that I know of.
24    Q   Who was moved to Ferriday Lower Elementary?
25    A   Rick Brown.
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    28 of 102

```
 1   Q   Those things happen in an educational setting and you

 2       understand that.  Right?

 3   A   Those things happen in life.

 4   Q   Now, during Ms. Hinson's time under you, did you know

 5       her to be an honest woman?

 6   A   Yes.

 7   Q   She was generally very clear about her desires for her

 8       school, I would assume.

 9   A   I would think that's fair.

10   Q   If there were issues of concern that she had, did she

11       express those to you clearly?

12   A   We talked on a regular basis about various issues that

13       affected the school and staff.

14   Q   Did you make the ultimate decision to transfer

15       Ms. Hinson from Ferriday Lower Elementary to Ferriday

16       Junior High?

17   A   Yes.

18   Q   Did anyone else give you input into that decision?

19   A   We had -- our leadership team for the district discussed

20       all transfers.

21   Q   Okay.  And who was on the leadership team?

22   A   Cindy Smith, Rhonda Moore, Dorothy Parker, Rhonda

23       Wilson.  But at the end of the day, the decision's mine.

24   Q   Okay.

25   A   But I do solicit input from those people that run the
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    29 of 102

| | | |
|---|---|---|
| 1 | A | I don't recall a specific meeting, no. |
| 2 | Q | What specifically was said between you and Ms. Hinson |
| 3 | | during the April 2015 meeting, the entirety of the |
| 4 | | conversation? |
| 5 | A | Which meeting are you referring to? |
| 6 | Q | Where you first disclosed to Ms. Hinson that there would |
| 7 | | be a transfer. |
| 8 | A | Basically ,just what I've already stated; that, you |
| 9 | | know, "Ms. Hinson, things are not going very well.  I |
| 10 | | need to make some changes and move some people around. |
| 11 | | I'd like to know where you'd be interested in working. |
| 12 | | If you were not at Ferriday Lower, what school would you |
| 13 | | like to go to?" |
| 14 | Q | Okay.  During that initial conversation, did Ms. Hinson |
| 15 | | disclose any concerns to you about her health -- |
| 16 | A | No. |
| 17 | Q | -- in April of 2015? |
| 18 | A | No. |
| 19 | Q | Ms. Hinson, based on your recollection, the only thing |
| 20 | | that she said was that she would like to remain at |
| 21 | | Ferriday Lower Elementary.  Is that correct? |
| 22 | A | That's correct. |
| 23 | Q | At that point, had you made up your mind to transfer |
| 24 | | Ms. Hinson already? |
| 25 | A | No.  As I said, we were talking to all four.  Actually, |

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    30 of 102

```
 1          we said in an administrator's meeting, in general to all
 2          administrators, that we were looking at making some
 3          changes for the new school year and that if anyone was
 4          interested in transfer and thought that they would be
 5          better -- more successful at a different school, to
 6          contact me and we would have that conversation.  That
 7          was said at a general administrator's meeting to staff.
 8    Q     Okay.
 9    A     And then, like I said, once we started, we did get a
10          little feedback from a couple who said, you know, I'd
11          like to stay here, I'd like to do this and whatever.
12          And then, once we got to the point where we said well,
13          these are the four schools we feel like really need to
14          be affected by the move, then we had the conversations
15          more specifically with those four people that I named.
16    Q     When was that administrator's meeting where you told --
17          asked everyone if anyone would be interested --
18    A     I don't recall --
19    Q     -- in transferring?
20    A     -- the date.
21    Q     Do you recall what month it was in?  March, April, May
22          2015?
23    A     I -- it would have been March or April, but I'm not sure
24          specifically.
25    Q     Did the job description for principal include requiring
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                          31 of 102

| 1 | | that principal to engage in extracurricular or extended |
| 2 | | day activity? |
| 3 | A | Depending on the level, they would.  All job |
| 4 | | descriptions, regardless of position, also have a caveat |
| 5 | | that says "other duties as assigned by the |
| 6 | | superintendent and/or supervisor." |
| 7 | Q | Do you know if the job description for a junior high |
| 8 | | principal required participation in extracurricular or |
| 9 | | extended day activity? |
| 10 | A | I would -- I would have to look.  And, right offhand, |
| 11 | | I'm not a hundred percent sure if it does or not. |
| 12 | Q | But that was something that you did expect of Ms. Hinson |
| 13 | | or did require of Ms. Hinson -- I'm sorry -- |
| 14 | A | That would be required -- |
| 15 | Q | -- upon the transfer to Ferriday Junior High? |
| 16 | A | That would be required of all junior and high school |
| 17 | | assistants and principals. |
| 18 | Q | To engage in the supervision -- |
| 19 | A | To supervise extra -- |
| 20 | Q | -- of extracurricular activities and extended day |
| 21 | | activities? |
| 22 | A | Yes. |
| 23 | Q | Okay. |
| 24 | A | And they, of course, were paid an additional stipend for |
| 25 | | that work. |

# Linda Perot, CCR

```
 1              she had health problems.  She said, "I'm not doing it."
 2    Q    Ms. Hinson did eventually disclose to you that she had
 3         health concerns and that's why she didn't want to do it.
 4         Is that correct?
 5    A    At the end of Nov- -- at the end of June, as I recall,
 6         she sent a letter, something about a foot.
 7              MR. WALTERS:
 8                   I'm going to show you a document I'm going to
 9              mark as Exhibit 11.
10    Q    All right.  And this document is entitled, Extra Duty
11         from the GBRE file.  Can you tell me what that is,
12         GBRE?
13    A    All policies and school boards throughout the State of
14         Louisiana have file names.
15    Q    Okay.
16    A    And this is simply the one that's assigned this
17         particular topic.
18    Q    All right.  Says, "The Concordia Parish School Board --
19         it's entitled, "Extra Duty," Exhibit 11 is, and it says,
20         "The Concordia Parish School Board recognizes that
21         teachers must be required to perform duties other than
22         classroom teaching.  It is recognized that student
23         clubs, school papers, annuals, athletics and supervision
24         of playgrounds, school buses and other activities under
25         the supervision of the school are and should be the
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                      33 of 102

```
 1          responsibility of the principal and his/her faculty.
 2          Principals are therefore required and directed to assign
 3          these duties equitably among the various members of
 4          their staff.  The professional guidance of all student
 5          activities in a school is essential to the local total
 6          growth and development of the pupils of the school."
 7          Was that policy in effect at the time that you
 8          transferred Ms. Hinson to Ferriday Junior High?
 9   A      I believe so, yes.
10   Q      Okay.  And I want to point your attention to the
11          sentence that says, "Principals are therefore required
12          and directed to assign these duties," meaning extra
13          duties, extracurricular activities, "equitably among the
14          various members of their staff."
15              MR. JOHNSON:
16                  Object to the form of the question.  Go ahead.
17   Q      I mean, that's what it's about.  It's about
18          extracurricular activities, this whole policy.  Right?
19              MR. JOHNSON:
20                  I don't -- I object to the form on that, but
21              you -- go ahead.
22   A      I think what this is talking about is everything from
23          duty on campus to lunchroom duty to before school, after
24          school, to the assigning of a 4-H sponsor, the
25          assignment of a sponsor for newspaper club to the
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                          34 of 102

```
 1              assigning of any of those types of activities.  Same way
 2              you would have teachers work at a ball game, they'll
 3              work the gate, they'll work the concession stand.
 4              That's what it means to me.
 5      Q       It specifically references athletics, which are the only
 6              two things that you've indicated were extracurricular
 7              activities at Ferriday Junior High.  Football and
 8              basketball.  Right?
 9      A       Well, you had student clubs there.  Depending on the
10              club, they could be an extracurricular activity.  They
11              could be after school just like 4-H could be at Ferriday
12              Lower.  4-H could be after school at Ferriday Junior
13              High.  A club -- you know, schools have different clubs.
14              They have different functions.  You have Beta, you have
15              student council, you have Deka depending on the grade
16              level, depending on the group of kids.  You have art
17              club.  You have music club.  You have dance club.  So,
18              all those are extracurricular activities.  Some of them
19              happen within a context of an eight to three school day.
20              Some of them are going to have activities after school.
21      Q       And what this policy says is -- it says, "Principals are
22              therefore required and directed to assign these duties
23              equitably among the various members of their staff."  Is
24              that correct?
25      A       Which means that you can't send the same three teachers
```

**Linda Perot, CCR**

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                    35 of 102

```
 1              to duty every football game --

 2    Q    Okay.

 3    A    -- and let the rest of the staff stay home.

 4    Q    So, while the policy says that Ms. Hinson, as a

 5         principal, is to assign these duties among her staff.

 6    A    Right.

 7    Q    What you told her was, you have to show up and be a part

 8         of the extracurricular activity?

 9    A    Principals have to be.  Principals are at

10         extracurricular activities, but they can't do that by

11         themselves.  They have to have support from the staff.

12    Q    Okay.

13    A    Just like I said earlier, that there would be teachers

14         and coaches and SRO's at sporting events, if you will

15         recall.

16    Q    It doesn't say principals are required to be at the

17         extracurricular activities, though?

18    A    Not in that particular policy, no.

19    Q    No.

20    A    It's not.

21    Q    And this is the only policy of the Concordia Parish

22         School Board regarding extracurricular activities after

23         school.  Is that correct?

24    A    I do not think so.

25    Q    What other policy did you rely upon to tell Ms. Hinson
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                    36 of 102

```
 1          that, despite her medical condition, she had to be at

 2          extracurricular activities at Ferriday Junior High?

 3    A     Her job description and the fact that she was getting

 4          paid to be there.  Just like other principals at that

 5          level throughout the system.  Remember the specific

 6          comment I said earlier about job descriptions, "other

 7          duties as assigned by superintendent or supervisor."

 8          Just like Ms. Hinson would have been in other duty when

 9          she assigned the teacher to work the gate.  Her support

10          for that decision would have been this policy right

11          here.

12    Q     Well, that policy directs her to assign the gate to

13          somebody else, doesn't it?

14    A     It makes the employee responsible for being there.

15          Recognizes that "teachers must be required to perform."

16    Q     Right.  Ms. Hinson was not a teacher.  She was a

17          principal.

18    A     Right.

19    Q     All right.  I want to review -- this is a stack of

20          meetings from the Concordia Parish School Board

21          meetings -- or I'm sorry, meeting minutes from the

22          Concordia Parish School Board meeting that we've been

23          provided by Concordia Parish School Board.

24              MR. WALTERS:

25                  I'm going to mark this as Exhibit 12.
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    37 of 102

```
 1    Q    And these minutes start at the top of the page.  It
 2         looks like the first one is listed as May 21st, 2015,
 3         and the last one that we were provided in this stack is
 4         listed for August 13th of 2015 and it's inclusive of the
 5         dates in between.  I just have a few questions about
 6         these different minutes.  Now, were you present at the
 7         school board meetings?
 8    A    Yes.
 9    Q    In terms of personnel matters, on the May 21st, 2015
10         minutes at page three of four it discussed personnel
11         announcement and it says, "The following personnel
12         announcements were made," and under paragraph A it says,
13         "Personnel Administrator Transfers."  And here it lists
14         all the transfers that we had previously discussed.
15         Rick Brown moved from Vidalia High to Ferriday Lower.
16         Bobbie Hinson from Ferriday Lower to Ferriday Junior
17         High, Arlana Davis from Ferriday Junior High to Vidalia
18         Lower, and Charles Anderson from Vidalia Lower to
19         Vidalia High.  All of those effective July 1st, 2015.
20         Is that correct?
21    A    Yes.
22    Q    And below that it lists a number of other personnel
23         matters that you would have provided information about
24         to the school board.  That includes leaves and, I
25         assume, that would be medical leave.  Is that correct?
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    38 of 102

1    you'd have to get with Rhonda Moore to go back and look

2    to see if there was sick days already in the bank that I

3    described to you earlier, then there would have been no

4    reason to put anybody on sick leave.  Therefore, the

5    time we got to the end of June -- which the principal

6    would have stopped working approximately the 20th of

7    June because that's when their contract would have ended

8    for the year.  My guess is, by the time she exhausted

9    her actual sick days, there was no need to put her on

10   leave.  And by then, she had already sent a letter that

11   she was going to retire.

12   Q    Okay.

13   A    But even though she did not provide the school system

14        with the appropriate forms for the medical leave, we had

15        already said that we would grant it; but, by the time

16        that it would have actually needed to go into effect,

17        she had already retired.

18   Q    Okay.  So, the actual truth is you did not grant her

19        medical leave.  Regardless of the reason, it didn't

20        happen?

21   A    No.  She was granted it.  Maybe Rhonda should have where

22        I okayed it at that time, but you don't go into the

23        system as being on medical leave until you actually

24        exhaust your sick days.

25   Q    Okay. So, she was at -- so everybody else is granted

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                            39 of 102

```
 1        that Ms. Hinson was regularly reporting to Ms. Smith

 2        when she had to be out.

 3   A    Well, there's a day in December, there's a couple of

 4        days here.  And February.

 5             MR. JOHNSON:

 6                  Object to the form.  What?  What was the

 7             question?  Regularly reporting what?

 8   Q    It appears, at least from these documents, that

 9        Ms. Hinson would report to her elementary director when

10        she was going to miss work.  Is that correct?

11             MR. JOHNSON:

12                  Just in general report --

13   A    That's what she was directed to do.  Based on what you

14        have here, she reported in December and she reported in

15        February that she was going to be out.

16   Q    All right.  I want to ask you a question about this

17        May 21st, 2015 letter from you to Ms. Hinson.

18             MR. WALTERS:

19                  I'm going to mark it as Exhibit 16.

20   Q    And it says, "Ms. Hinson, please note that I conferred

21        with our attorney regarding your transfer to Ferriday

22        Junior High School.  In our conversation on May 19th,

23        2015, you stated that you would not attend any

24        extracurricular activities.  Your attendance and

25        supervision at such events are, in fact, part of your
```

# Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    40 of 102

```
 1              job responsibilities as principal there and you should

 2              make plans to fulfill that responsibility as required by

 3              your job description."  All right, that's your statement

 4              to Ms. Hinson on May 21st, 2015.

 5      A       That's correct.

 6      Q       Is that correct?

 7      A       Yes.

 8      Q       Okay.  Now, what need did you have to confer with an

 9              attorney regarding her transfer if it was within your

10              right to transfer any principal?

11      A       My question to Jon was, I can't, in fact, hold her

12              accountable for attending extracurricular activities?

13                   MR. JOHNSON:

14                        I think we're getting pretty close to some

15                   attorney/client stuff, Lamar, so --

16                   MR. WALTERS:

17                        I didn't ask him to tell me.  I asked him to

18                   tell me why he felt the need to confer with an

19                   attorney.

20                   MR. WALTERS TO WITNESS:

21                        I mean, I would --

22                   MR. JOHNSON:

23                        That's fine.

24                   MR. WALTERS TO WITNESS:

25                        -- I would direct you not --
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    41 of 102

1      MR. JOHNSON:

2            That's fine.   That's fine.

3      MR. WALTERS TO WITNESS:

4            Don't tell me anything that your attorney

5      discussed with you or that you discussed with the

6      attorney, okay?

7      WITNESS:

8            All right.

9      MR. WALTERS TO WITNESS:

10           During the term of your employment anyway.

11   Q    So, you -- your --

12   A    So, she told me no, she wasn't going to do it.   I told

13        her yes, she is.

14   Q    Okay.   And then you went to the attorney to see whether

15        or not -- because you had concerns about whether or not,

16        in fact, you had the authority to require her to engage

17        in extracurricular activities?

18   A    I just wanted to verify I had.   In my mind, I had the

19        authority.

20   Q    Okay.

21   A    You know, you're an attorney.   You realize the game

22        people play when they say their law -- they're going to

23        get their lawyer.   You know, I get that call once a week

24        about the -- I'm calling my lawyer to sue you because

25        you didn't do what I wanted.

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                    42 of 102

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | Did you send it to anybody to approve or sanitize? |
| 3 | A | No.  I can type fairly well. |
| 4 | Q | Do you send it to anybody for review before you sent it |
| 5 | | out? |
| 6 | A | No. |
| 7 | Q | Now, this May 22nd, 2015 letter that's marked as |
| 8 | | Exhibit 17 tells Ms. Hinson that her transfer to |
| 9 | | principal of Ferriday Junior High does not become |
| 10 | | effective until July 1st, 2015.  Is that correct? |
| 11 | A | Right. |
| 12 | | MR. WALTERS: |
| 13 | | Now, Exhibit 18 -- |
| 14 | A | Excuse me.  You have to that exhibit her resig- -- her |
| 15 | | retirement letter.  Did you mean to attach those two |
| 16 | | together? |
| 17 | Q | No.  I'm sorry.  That's -- that was an inadvertent |
| 18 | | attachment.  I'll take that off.  Thank you for pointing |
| 19 | | that out.  I appreciate that. |
| 20 | | MR. WALTERS: |
| 21 | | Exhibit 18 -- I'm trying to keep these in |
| 22 | | chronological order.  That would not be |
| 23 | | chronologically correct.  I'm going to show you a |
| 24 | | document that's marked as Exhibit 18. |
| 25 | Q | This is a letter from -- to you from Dr. Laravia.  It's |

### Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    43 of 102

```
 1          dated May 28th, 2015 and it says, "Dear Dr. Nelson, I

 2          saw Ms. Bobbie Hinson today for multiple medical

 3          problems and I have asked her to go on medical leave

 4          beginning June 1st until August 2015.  I will reassess

 5          her progress in a few weeks.  Thanks for your support of

 6          her medical care."

 7     A    I'm telling you that that information does not rise to

 8          the level for me to approve extended leave -- sick

 9          leave.  She could be on leave or out sick with that,

10          obviously, but it does not rise to the level to be

11          granted extended sick leave or medical sabbatical.

12     Q    Okay.  Regardless of whether it rises to that level or

13          not, you were placed on notice that her physician

14          believed that she had a condition serious enough to

15          warrant medical leave for all the way through the

16          beginning of August 2015.  Correct?

17     A    Conveniently after she was transferred, yes.

18     Q    So, what you're saying is, you think that this doctor

19          would risk his medical license to make up a reason for

20          her to be on medical leave?

21              MR. JOHNSON:

22                  Object to the form of the question.

23     A    Based on the fact that you tried to transfer her?

24              MR. JOHNSON:

25                  Object to the form of the question.  Is that
```

**Linda Perot, CCR**

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    44 of 102

```
 1    A    Dr. Laravia did not provide us with information needed
 2         to grant her extended medical leave or a medical
 3         sabbatical under board policy and state law.  He was
 4         requested to do so and you'll find another document
 5         floating around here somewhere in which he refuses to do
 6         so.  If you go back and look, you'll find that
 7         Ms. Hinson should not have been docked one dollar during
 8         the time that she was out because I would have guessed
 9         that her sick days were used during that time period
10         and, before anything else happened she retired, which is
11         your next document that you have right here
12         (indicating).
13    Q    All right.
14              MR. WALTERS:
15                   I'm going to show you a document that's marked
16         as --
17              COURT REPORTER:
18                   Nineteen.
19              MR. WALTERS:
20                   -- Exhibit 19.
21    Q    So, there's an e-mail from Bobbie Hinson dated May 29th,
22         2015 to you and Rhonda Moore, and it says, "Dr. Paul
23         Nelson, I am sending this e-mail to let you know that
24         following my doctor's appointment on yesterday,
25         May 28th, under the advice of my doctor he requested
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647 acourtreporter2@gmail.com

Exhibit 2                                          45 of 102

1      that I go on medical leave due to ongoing health

2      concerns for the duration of the summer and potentially

3      through the beginning of the next school year.  You

4      should be -- "

5  A   Ask that again?

6  Q   "You should be receiving in reference to this medical

7      leave from my doctor within a day or two.  Also, I

8      received your letter regarding the duties and

9      responsibilities of a junior high principal.  I would

10     like to be clear that it is my intent to maintain my

11     duties as a principal.  However, as I tried to explain

12     to you, I do have health issues that prevent extended

13     extra curriculum activities.  Since that there are

14     several elementary school positions within the Concordia

15     Parish School System it would be my hope that in

16     planning staffing for the 2015-16 school year you will

17     consider my overall health concerns.  My duties as an

18     elementary principal at FLE are not prohibited by my

19     health.  I am at FLE today finalizing my duties as

20     principal."  So, to break this down, Ms. Hinson advises

21     you that under the advice of her doctor he requested

22     that she go on medical leave due to ongoing health

23     concerns.  Is that correct?

24  A   That's what it says.

25  Q   Okay.  All right.  So, at the very least, between

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    46 of 102

```
 1            Dr. Laravia's letter on the 28th and Ms. Hinson's letter
 2            on the 29th, she put you on notice that she's got a
 3            health concern and that she has at least requested
 4            medical leave or will request medical leave.  Is that
 5            correct?
 6      A     Yes.
 7      Q     Okay.  She tells you that "you should be receiving
 8            correspondence in reference to this medical leave from
 9            my doctor within a day or two."  Is that correct?
10      A     Yes.
11      Q     Okay.  She says then -- she references your letter
12            regarding the duties and responsibilities of a junior
13            high principal.  And the only letter that I've seen in
14            the documents that we've passed around about the duties
15            of a junior high principal was Exhibit 16, the May 21st
16            letter that --
17      A     Which is in response to our meeting of May 19th in which
18            she said she was not --
19      Q     Okay.
20      A     She never explained anything about a health issue to me
21            at that point.
22      Q     Okay.
23      A     These are the first documents that come up with a --
24      Q     Okay.
25      A     -- health issue.
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                    47 of 102

| | | |
|---|---|---|
| 1 | Q | And so, at this point, you know about the health issue, |
| 2 | | and she says -- |
| 3 | A | We don't know specifically what health issue it is |
| 4 | | because, if you knew specifically what health issue it |
| 5 | | was, then you may be in a position to make |
| 6 | | accommodations if they're appropriate and necessary. |
| 7 | Q | Okay. |
| 8 | A | There is no -- there is no information in either |
| 9 | | document that would lead me to understand what kind of |
| 10 | | problem.  Just like if I have a person who's had knee |
| 11 | | surgery and they can no longer physically operate a weed |
| 12 | | eater because they can't stand on their knee, then |
| 13 | | accommodations are made for employees.  There is no such |
| 14 | | information here. |
| 15 | Q | Okay.  And you didn't ask her? |
| 16 | A | It's not my responsibility to ask. |
| 17 | Q | Okay.  It's your responsibility to communicate with your |
| 18 | | staff.  Is that correct? |
| 19 | A | Yes, and I -- obviously, I did or you wouldn't have a |
| 20 | | copy of the letter. |
| 21 | Q | It's your responsibility to ensure that your staff is |
| 22 | | physically able -- physically capable of performing the |
| 23 | | duties that you assign to them? |
| 24 | A | I'm not sure I agree with that. |
| 25 | Q | Okay.  So, for instance, if you had a paralyzed person |

## Linda Perot, CCR

| | | |
|---|---|---|
| 1 | | principal at FLE and that's not prohibited by her |
| 2 | | health.  Okay. |
| 3 | A | She says that there are other elementary positions in |
| 4 | | this e-mail.  There were not. |
| 5 | Q | Okay. |
| 6 | A | Based on your own information that you provided, those |
| 7 | | positions had already been filled. |
| 8 | Q | But who has control over that? |
| 9 | A | I do. |
| 10 | Q | Right.  So, you can make another elementary position, if |
| 11 | | you want to. |
| 12 | A | So -- so you think it's very practical for me to move |
| 13 | | somebody one day and then turn around and move them the |
| 14 | | next based on what? |
| 15 | Q | Based on a representation to you that she can't do the |
| 16 | | work. |
| 17 | A | I'm not sure that I under- -- that I agree with that |
| 18 | | because I think that there's a fundamental issue here |
| 19 | | about what's the difference in being a junior high |
| 20 | | principal and a lower elementary principal.  And I've |
| 21 | | been both.  The only difference is being at some -- a |
| 22 | | handful of football games or basketball games.  That's |
| 23 | | the only difference -- |
| 24 | Q | Okay. |
| 25 | A | -- in the age of the children. |

**Linda Perot, CCR**

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    49 of 102

```
 1    Q    Did you make any effort to alleviate the problem that
 2         Ms. Hinson expressed to you by making any accommodations
 3         such that she would have assistance with the
 4         extracurricular activities, such that she could return
 5         to an elementary school to do the job?  Did you make any
 6         accommodation whatsoever to allow her to continue to
 7         perform as a principal in the Concordia Parish School
 8         System?
 9              MR. JOHNSON:
10                  Same objection, but go ahead and answer best
11              you can.
12    A    She did not do the job.  There was no reason -- no
13         availability to make any accommodations.
14              MR. WALTERS:
15                  Object to the form.
16    Q    Did you make any effort to make any accommodations to
17         allow her to do the job that she told you she couldn't
18         do with the extracurricular --
19    A    After she had already --
20    Q    -- activities?
21    A    -- been moved?  Not before, but after she had been moved
22         when she told me she would not do extracurricular
23         activities, did I come up with a plan to somehow move
24         her back because she said she couldn't do it?  Based on
25         what information would I have used?  I -- no, I did not
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2

1          because I did not have any information.

2     Q    And likewise, you did not come up with a plan to have

3          anybody assist her with extracurricular --

4     A    She has an --

5     Q    -- activities?

6     A    -- assistant principal.  She has a football coach, a

7          basketball coach, an athletic director, a counselor and

8          a staff of about 25 people.

9     Q    And likewise, you didn't say you don't have to attend

10         those extracurricular activities --

11    A    No, I did not.

12    Q    -- at Ferriday Junior High?

13    A    Okay.  Despite her assertion to you and despite the

14         doctor's assertion to you that there's a medical issue?

15    A    The doctor did not assert anything to me other than she

16         needed to be on medical leave through August.  School

17         would have started in August.

18    Q    All right.

19              MR. WALTERS:

20                   I'll show you an e-mail on May 29th from you

21              to Ms. Hinson.  It's Exhibit 20.  And I don't

22              believe this was produced by Concordia Parish

23              School Board and I'm going to ask that all e-mails

24              from Mr. Nelson to Ms. Hinson be produced.

25    Q    It says, "Ms. Hinson, I'm including Rhonda Moore in on

# Linda Perot, CCR

```
1        this e-mail as it will probably be more paperwork
2        required for any type of medical leave.  It goes without
3        saying that your absence does present a problem as there
4        are a number of things that need to be done at FJHS this
5        summer; but we, Dr. Wilson and I, will take a look and
6        see how we can cover it.  There are no open elementary
7        positions in the parish at this time; however, should
8        one come open, I will consider you for that position.
9        In the interim, I would hope that you would work to
10       complete all of the responsibilities of your job
11       description regardless of site location."  Okay.  So,
12       this e-mail from you to Ms. Hinson basically says that
13       her absence, which is a result of her medical condition,
14       presents a problem for you.  Is that correct?
15   A   Yes.  Because schedule -- school business has to
16       continue.
17   Q   Okay.
18   A   Yes, it does.
19   Q   And you said that "there are no open elementary
20       positions in the parish at this time," although none of
21       those elementary transfers had been made effective at
22       this point.  Isn't that correct?
23   A   They had been announced and told to employees  That's
24       correct.
25   Q   And none of them were effectively in that position as of
```

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                        52 of 102

1        May 29th?

2    A   They had already begun the transition.

3    Q   Okay.  All you had to do was simply state that you're

4        staying over here and Ms. Hinson's going back over

5        there.  Right?

6            MR. JOHNSON:

7                Yeah.  We'll stipulate he could have done all

8            those things.

9            MR. WALTERS:

10               Okay.  All right.

11           MR. JOHNSON:

12               Yes.

13   Q   And you state that, in the interim, -- in other words,

14       between now and until I can get you in any kind of

15       elementary principal position, which wasn't open for

16       that entire year according to you, Ms. Hinson was just

17       going to have to tough it out and tough it out and do

18       all of the responsibilities of her job description.  Is

19       that correct?

20           MR. JOHNSON:

21               Object to the form of the question.  The

22           document speaks for itself.

23   Q   Is that correct?

24           MR. JOHNSON:

25               I don't like the form of the question.  "Tough

# Linda Perot, CCR

LOUISIANA DEPARTMENT OF EDUCATION
Compass Information System
Compass
Evaluation Report

Page: 1
Date: 6/30/2014
Time: 10:32 AM

School Session:        2013 - 2014

LEA:                   015 - Concordia Parish

School:                015004 - Ferriday Lower Elementary School

Employee:              BOBBIE F HINSON

---

Evaluation Type:                              L - Leader

Overall Evaluation Rating:                    Highly Effective (3.68)

   Overall Professional Practice Rating:      Effective: Proficient (3.36)

   Overall Student Growth Rating:             Highly Effective (4.00)
     Transitional Student Growth Data
     Composite Percentile:                     Transitional student growth data is not yet available for this school year.

Intensive Assistance Required?                No

Evaluator General Comments:                   N/A

Professional Practice Comments:               Ms. Hinson is working hard to improve the instructional
                                              program at FLE. Teachers are focusing on data and student
                                              performance which is a huge step in the right direction. As
                                              the state assessments change the instruction in the
                                              classroom will have to reflect the same changes. Ms. Hinson
                                              is very capable of leading the teachers through the changes
                                              necessary to improve school performance. There will always
                                              be resistance but strong leadership will find ways to unite
                                              the faculty so that teachers encourage each other to stay
                                              focused.

Student Growth Comments:

Date Evaluation Completed:                    6/30/2014

Employee Acknowledgement Comments:

Employee Acknowledgement Date:

I have reviewed my final evaluation in its entirety.  I acknowledge that I have been given an opportunity to provide a written
response and to discuss the evaluation results with my evaluator, upon my request.

Signatures (optional):

_Bobbie Hinson_ _____          _6 - 30 - 14_
Employee Signature                          Date

_Cynthia Smith_ _____          _6/30/14_
Evaluator/Supervisor Signature              Date



Ex, 8
DEPOSITION
EXHIBIT

Exhibit 2                                                      54 of 102

*visiana Believes.*

BOBBIE F HINSON
2013 - 2014
015 - Concordia Parish
015004 - Ferriday Lower Elementary School
Evaluator: CYNTHIA W SMITH

## Site Visit

Evaluation Type:      L – Leader

Observation Type:    V – Site Visit

Site Visit Title:       end of year 2013 - 2014

Site Visit Date:       6/16/2014 (Begin)      6/27/2014 (End)

Pre-Visit Conf.:

Post-Visit Conf.:

---

### Observation Ratings

Domain:                1 – Domain I: School Vision

Component:             1 – 1a:  Sets ambitious, data-driven goals and a vision for achievement; invests teachers, students, and other stakeholders in that vision

Component Rating:      4 – Highly Effective

### Observation Comments

Aligns resources to maximize instructional opportunities that align with the vision and goals of the administrator. All stakeholders are aware of the vision. Data is used to set goals. A PTO has been established to keep parents involved with the academic program and vision of the school.

Suggestion: Periodically, get the instructional council to meet with the para group and review overall grade level data. I think it would help them to understand the vision of the school and the requirements of the teachers.

### Observation Ratings

Domain:                2 – Domain II: School Culture

Component:             1 – 2a:  Facilitates collaboration between teams of teachers

Component Rating:      4 – Highly Effective

### Observation Comments

Teachers demonstrate ownership of collaboration by leading the sessions. Collaboration focuses on student performance data from DIBELS, weekly assessments, DRC, and other test.

Exhibit 2

*Louisiana Believes.*

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

## Observation Ratings

Domain: 2 - Domain II: School Culture

Component: 2 - 2b: Provides opportunities for professional growth and develops a pipeline of teacher leaders

Component Rating: 3 - Effective: Proficient

### Observation Comments

Teacher leaders within the school provide additional support to other staff members. Ms. Hinson supports professional growth through school wide professional development opportunities that in addition to the district professional development.

Suggestion: Plan professional development that meets the needs of individual teachers. This could be small groups of teachers that have unique needs such as, classroom management or instruction with math skills.

## Observation Ratings

Domain: 2 - Domain II: School Culture

Component: 3 - 2c: Creates and upholds systems which result in a safe and orderly school environment

Component Rating: 4 - Highly Effective

### Observation Comments

required mandated training is evident in the portfolio. The school site is secure and the environment in conducive for learning. ear expectations are defined for staff and students.

## Observation Ratings

Domain: 3 - Domain III: Instruction

Component: 1 - 3a: Observes teachers and provides feedback on instruction regularly

Component Rating: 3 - Effective: Proficient

### Observation Comments

ompass observations are performed on time. The teacher evaluation schedule is planned before school begins.

Suggestion: Appraise walkthroughs are not consistent throughout the school year. The Appraise instrument is supposed to provide edback to teachers and identify areas of concern before the Compass observations are conducted. Next year, assign the alkthrough observations between administrative staff so that teachers get feedback on a regular basis throughout the school year.

Exhibit 2                                          56 of 102

isiana Believes.

BOBBIE F HINSON
2013 - 2014
015 - Concordia Parish
015004 - Ferriday Lower Elementary School

### Observation Ratings

| | |
|---|---|
| main: | 3 - Domain III: Instruction |
| mponent: | 2 - 3b:  Ensures teachers set clear, measurable objectives aligned to the Common Core |
| mponent Rating: | 3 - Effective: Proficient |

### Observation Comments

sson plans are checked on a regular basis. Planning is a part of the collaboration time. Resources are provided for intervention or mediation.

ggestion: Third grade scores on the iLEAP test for 2013 - 2014 declined from the previous year. The third grade scores are ere FLE will get their School Performance Score. In order to increase performance on state assessments rigorous course ntent must be a part of the daily instruction. Through teacher walkthroughs look for the content defined in the standards and for depth of knowledge. This also needs to be checked on the teachers weekly assessments. Make sure that alignment to Common re is evident in lesson plans.

### Observation Ratings

| | |
|---|---|
| main: | 3 - Domain III: Instruction |
| n  nent: | 3 - 3c:  Ensures teachers use assessments reflective of Common Core rigor |
| mponent Rating: | 3 - Effective: Proficient |

### Observation Comments

llaboration sessions concentrate on student data. The teachers analyze weekly assessment results. Intervention and remediation etermined based on the findings. Next steps are to make sure that the questions on the assessments align to the common core ndards, use the same academic vocabulary, and increase the depth of knowledge students need to perform well on state sessments. The collaboration sessions are an improvement to school wide faculty meetings. Teachers are focusing on data. The t steps are suggestions to move forward from where you have grown as a school.

### Observation Notes

achers met by grade level to review student data. The administrators served as facilitators and did not dominant the discussion. achers talked about individual students and overall grade performance results.

ggestion: Include student work in the discussions. Also, look at the questions on the assessments and compare them to the ademic vocabulary within the standards.

### Areas of Strength

. Hinson has spent a lot of time on scheduling to provide time for collaboration and instructional council meetings. The teachers para know when the meetings will be held and are held accountable for being on time. The collaboration times have gone from ninistrative leadership to teacher leadership.

*Page 3 of 4*

Exhibit 2

*visiana Believes.*

BOBBIE F HINSON
2013 - 2014
015 - Concordia Parish
015004 - Ferriday Lower Elementary School

## Areas of Improvement

ntinue to gain knowledge about the third grade assessment and the Common Core Standards. Make sure all teachers
derstand the standards and the level that they will be tested. Daily instruction and assessments must reflect alignment to the test
d standards.

e 2013 - 2014 iLEAP scores for third grade declined from the previous year. Meet with Mrs. Russ to discuss collaboration
tween the schools.

## Next Steps

## Scoring

erage components' ratings:   3.43   Effective: Proficient

_____
Evaluator Signature

_____
Employee Signature

_____6/30/14_____
Date

_____6-30-14_____
Date

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

# Student Learning Target

**Evaluation Type:**      L - Leader

**Course Category:** READ - Reading      **Grade:**   01 - FIRST        **Number of Students:**   199

**Interval of Instruction:**      01 - Full Academic Year

**Rating Score:**      4.00      Exceptional Attainment of Target

## Student Assessment Name

032 - Scantron

## Student Learning Target

By the end of the 2013 - 2014 school year, 115 -120 students or 58% -61% of the 199 First and Second Grade Students taking the Scantron Performance Series at Ferriday Lower will achieve the District Scale Score.

## Rationale for SLT

Performance Series from Scantron is a computer-adaptive test that lets you quickly pinpoint the proficiency level of your students, across a range of subjects that correspond with the specific standards of CCSS Common Core State Standards. This provides for more accurate student placement; diagnosis of instructional needs, including instructional adjustments; and measurement of student gains across reporting periods.

## Baseline Data

First and Second grade were given the Reading Pre- Assessment in the Scantron Performance Series and the results are as follows:

First Grade: (District Scale Score for Reading Foundation is 1585)
74 students had a scale score of 1300- 1584
35 students had a scale score of 1585-2123
Second Grade (District Scale Score for Reading is 2107)
80 students had a scale score of 1576 - 2106
11 students had a scale score of 2107 - 2414

## Student Achievement Results

131 students met the target goal in reading for the 2013-2014 school year.

**Employee Report Results Comments**        **Employee Report Results Date:** 5/14/2014

I am pleased that many students scored at or above the District Scale Score in Reading for first and second grade obtaining exceptional attainment.

**Evaluator Comments**        **Evaluator Comments Date:** 6/18/2014

Student performance exceeded the target for this SLT. As compared to previous years this demonstrates student growth with this set of students.

Exhibit 2

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

# Student Learning Target

| Scoring Plan | | | |
|---|---|---|---|
| **Insufficient Attainment of Target (1):** | **Partial Attainment of Target (2):** | **Full Attainment of Target (3):** | **Exceptional Attainment of Target (4):** |
| Demonstrated an insufficient impact on student learning by falling far short of the target. | Demonstrated some impact on student learning, but did not meet the target. | Demonstrated a considerable impact on student learning by meeting the target. | Demonstrated an outstanding impact on student learning by surpassing the target by a meaningful margin. |
| **Achievement Range:** | **Achievement Range:** | **Achievement Range:** | **Achievement Range:** |
| 109 students or less or 54% or less will achieve the district's scale score or lower in reading for first and second grade. | 110 - 114 students or 55% - 57% will achieve the district's scale score in reading for first and second grade. | 115 - 120 students or 58% - 61% will achieve the district's scale score in reading for first and second grade. | 121 students or 61% or more will achieve the district's scale score or better in reading for first and second grade. |

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

# Student Learning Target

Course Category:  MATH - Mathematics        Grade:     02 - SECOND            Number of Students:   199

Interval of Instruction:        01 - Full Academic Year

Rating Score:            4.00        Exceptional Attainment of Target

## Student Assessment Name

032 - Scantron

## Student Learning Target

By the end of the 2013 - 2014 school year, 90 -100 or 45% -50% of the 199 First and Second Grade Students taking the Scantron Performance Series at Ferriday Lower will achieve the District Scale Score.

## Rationale for SLT

Performance Series from Scantron is a computer-adaptive test that lets you quickly pinpoint the proficiency level of your students, across a range of subjects that correspond with the specific standards of CCSS Common Core State Standards. This provides for more accurate student placement; diagnosis of instructional needs, including instructional adjustments; and measurement of student gains across reporting periods.

## Baseline Data

F.    Grade: (District Scale Score for Math is 1712)
75 students had a scale score of 1503 - 1711
33 students had a scale score of 1712 - 2303

Second Grade (District Scale Score for Math is 2154)
84 students had a scale score of 1503 - 2153
3 students had a scale score of 2154 - 2204

## Student Achievement Results

15 students met the target goal in math for the 2013-2014 school year.

**Employee Report Results Comments**        **Employee Report Results Date:** 5/14/2014

I am pleased that many students scored at or above the District Scale Score in Math for first and second grade obtaining exceptional attainment.

**Evaluator Comments**        **Evaluator Comments Date:** 6/18/2014

This target indicates that 79 students surpassed the targeted score. That number of students can contribute to future success for Ferriday Lower.

Exhibit 2

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

# Student Learning Target

| Scoring Plan | | | |
|---|---|---|---|
| **Insufficient Attainment of Target (1):** | **Partial Attainment of Target (2):** | **Full Attainment of Target (3):** | **Exceptional Attainment of Target (4):** |
| Demonstrated an insufficient impact on student learning by falling far short of the target. | Demonstrated some impact on student learning, but did not meet the target. | Demonstrated a considerable impact on student learning by meeting the target. | Demonstrated an outstanding impact on student learning by surpassing the target by a meaningful margin. |
| **Achievement Range:** | **Achievement Range:** | **Achievement Range:** | **Achievement Range:** |
| 79 students or less or 40% or less will achieve the district's scale score or lower in math for first and second grade. | 80 - 89 students or 41% - 45% will achieve the district's scale score in math for first and second grade. | 90 - 100 students or 45% - 50% will achieve the district's scale score in math for first and second grade. | 101 students or more  or 51% or more will achieve the district's scale score or better in math for first and second grade. |

Exhibit 2

BOBBIE F HINSON
2013 - 2014
015 - Concordia Parish
015004 - Ferriday Lower Elementary School

# Student Learning Target

_____
Evaluator Signature

_____
Employee Signature

_____
6/30/14
Date

_____
6/30/14
Date

**BOBBIE F HINSON**

**2013 - 2014**

**015 - Concordia Parish**

**015004 - Ferriday Lower Elementary School**

# Professional Growth Plan

**Evaluation Type:**   L - Leader

---

**Goal 1**                    **Align Goal to Domain:** Domain I: School Vision

By the end of the school year, I will implement a strong 'Collaboration' system among teachers by grade level to 'Analyze Data'; establish effective Professional Learning Communities (PLCs), by writing tests together, comparing results, and identifying students' weaknesses.

---

**Action Step 1**                    **Target Date:** 5/21/2014

Teachers will build a Data Calendar to identify the 'assessments' (DIBELS Next, DCS, Scantron, Weekly tests, Pre-Post Assessments, Teacher Tool Box, Reading Street, Engage NY- Mathematics and ITBS) students must achieve to show growth in reading and math

**Resources Needed**

Test Results, Data Calendar, Agendas. Sign-in, and recorded documentation
Study-Engage NY- Math, Modules, http:www.engageny.org/ mathematics
Reading Street
http:www.pearsonsuccessnet.com

---

**Action Step 2**                    **Target Date:** 5/21/2014

Evaluate teachers and paras to ensure that daily lessons plans meet the needs of the students

**Resources Needed**

Lesson plans, written 'walk-through's, evaluations and observation and conference notes with teachers

---

**Action Step 3**                    **Target Date:** 5/21/2014

Attend 'Data Review' meetings and work with teachers during 'Data Analysis'

**Resources Needed**

Data Review documentations, agendas and sign-in

---

**Action Step 4**                    **Target Date:** 5/21/2014

Collaborate with other school leaders through NETWORK 2 School Leader Collaboration

**Resources Needed**

Attend workshops, maintain emails from NETWORK 2, study reviews on effective school collaborations

---

**Goal 2**                    **Align Goal to Domain:** Domain III: Instruction

By the end of the school year, I continue to learn how to effectively implement the COMPASS Instrument for teacher evaluation and the CCSS in the engageny- math and Reading Street series.

---

**Action Step 1**                    **Target Date:** 5/21/2014

Attend TECH Day to learn more about Reading Street series Collaborate with teachers

---

Exhibit 2

64 of 102

BOBBIE F HINSON

2013 - 2014

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

# Professional Growth Plan

**Resources Needed**

TECH Day Schedule, sign-in agenda, documentations

---

**Action Step 2**                                    **Target Date:** 5/21/2014

Attend workshops on engageny and Reading Street

**Resources Needed**

Notes, modules, Curriculum Overview –grades P-5
http:/www.engageny.org/
http:perasonsuccessnet.com

---

**Action Step 3**                                    **Target Date:** 5/21/2014

Attend COMPASS training

**Resources Needed**

COMPASS documentation

---

**Action Step 4**                                    **Target Date:** 5/21/2014

Work with teachers to implement the CCSS in reading and math

**Resources Needed**

Data Calendar, Assessments, Lesson Plans, sign-in, agendas, etc.

---

**Beginning of Year Employee Comments**          **Employee Acknowledgement Date:**

---

**Beginning of Year Evaluator Comments**          **Evaluator Acknowledgement Date:**

---

**End of Year Employee Comments**                **Employee Acknowledgement Date:**

---

**End of Year Evaluator Comments**                **Evaluator Acknowledgement Date:**

Exhibit 2                                                                    65 of 102

BOBBIE F HINSON
2013 - 2014
015 - Concordia Parish
015004 - Ferriday Lower Elementary School

## Professional Growth Plan

_____
Evaluator Signature

_____
6|30|14
Date

_____
Employee Signature

_____
Date

LOUISIANA DEPARTMENT OF EDUCATION
Compass Information System
Compass
Evaluation Report

Page: 1
Date: 7/15/2015
Time: 8:04 AM

School Session:        2014 - 2015

LEA:                   015 - Concordia Parish

School:                015004 - Ferriday Lower Elementary School

Employee:              BOBBIE F HINSON

Evaluation Type:                              L - Leader

Overall Evaluation Rating:                    Highly Effective (3.72)

   Overall Professional Practice Rating:      Effective: Proficient (3.43)

   Overall Student Growth Rating:             Highly Effective (4.00)
      Transitional Student Growth Data
      Composite Percentile:                   N/A

Intensive Assistance Required?                No

Evaluator General Comments:                   I look forward to working with you to improve student
                                              achievement at FHS next school year.

Professional Practice Comments:               I have seen some improvement throughout the school year in
                                              the construction of your binder.

Student Growth Comments:                      Your second grade did a great job in meeting your goals for
                                              them.

Date Evaluation Completed:                    6/17/2015

Employee Acknowledgement Comments:            I agree with my overall rating of highly effective.

Employee Acknowledgement Date:                7/10/2015

I have reviewed my final evaluation in its entirety. I acknowledge that I have been given an opportunity to provide a written
response and to discuss the evaluation results with my evaluator, upon my request.

Signatures (optional):

_Bobbie Hinson_                        _7-15-2015_
Employee Signature                     Date

_[signature]_                          _7/15/15_
Evaluator/Supervisor Signature         Date

Ex. 9
DEPOSITION
EXHIBIT
PENGAD 800-631-6989

Exhibit 2                                67 of 102

Louisiana Believes.

BOBBIE F HINSON
2014 - 2015
015 - Concordia Parish
015004 - Ferriday Lower Elementary School
Evaluator: PAUL E NELSON

# Site Visit

Evaluation Type:    L - Leader

Observation Type:    V - Site Visit

Site Visit Title:    Second Visit

Site Visit Date:    6/16/2015 (Begin)    6/16/2015 (End)

Pre-Visit Conf.:

Post-Visit Conf.:

## Observation Ratings

Domain:    1 - Domain I: School Vision

Component:    1 - 1a: Sets ambitious, data-driven goals and a vision for achievement; invests teachers, students, and other stakeholders in that vision

Component Rating:    4 - Highly Effective

### Observation Comments

The principal has demonstrated that she has met the requirements of this component by setting data driven goals and communicating her vision with the teachers at FLE.

## Observation Ratings

Domain:    2 - Domain II: School Culture

Component:    1 - 2a: Facilitates collaboration between teams of teachers

Component Rating:    3 - Effective: Proficient

### Observation Comments

The principal has shown that there was a great deal of collaboration among the teachers, but there was no evidence to support the number of walk through observations at the school.

## Observation Ratings

Domain:    2 - Domain II: School Culture

Component:    2 - 2b: Provides opportunities for professional growth and develops a pipeline of teacher leaders

Component Rating:    3 - Effective: Proficient

### Observation Comments

There was evidence that the principal provided opportunities for professional development through district initiatives but few at the school level(i.e., book study, consultant, etc.). There was evidence that teachers led a number of staff collaboration meetings but there was no evidence that any professional development opportunities were created based on teacher observations and/or staff requests.

*Louisiana Believes.*

BOBBIE F HINSON
2014 - 2015
015 - Concordia Parish
015004 - Ferriday Lower Elementary School

---

### Observation Ratings

...main:              2 - Domain II: School Culture

...mponent:           3 - 2c:  Creates and upholds systems which result in a safe and orderly school environment

...mponent Rating:    4 - Highly Effective

### Observation Comments

...Hinson has supplied ample evidence for this component.

### Observation Ratings

...nain:              3 - Domain III: Instruction

...nponent:           1 - 3a:  Observes teachers and provides feedback on instruction regularly

...nponent Rating:    4 - Highly Effective

### Observation Comments

...re is evidence to support that Ms. Hinson gave regular feedback to the staff.

### Observation Ratings

...nain:              3 - Domain III: Instruction

...nponent:           2 - 3b:  Ensures teachers set clear, measurable objectives aligned to the Common Core

...nponent Rating:    3 - Effective: Proficient

### Observation Comments

...re is evidence of some planning in relation to the Common Core, but there is little evidence of the use of guidebooks, ...essment guides(from conversations with the 3rd grade), and/or documentation of  discussions about teaching strategies in ...tion to the Common Core standards.

### Observation Ratings

...nain:              3 - Domain III: Instruction

...nponent:           3 - 3c:  Ensures teachers use assessments reflective of Common Core rigor

...nponent Rating:    3 - Effective: Proficient

### Observation Comments

...re is evidence of some planning in relation to assessments aligned with the Common Core, but there is little evidence in relation ...ocumentation of data review sessions and comparisons to the Common Core and/or the review of weekly assessments used in ...ruction to ascertain whether or not they were aligned with the CCSS.

---

## Observation Notes

...on has done a good job of putting her binder together. It is organized and was submitted on time.

---

## Areas of Strength

...components of creating a safe and orderly environment and setting data driven goals were strengths.

*Louisiana Believes.*

BOBBIE F HINSON

2014 - 2015

015 - Concordia Parish

015004 - Ferriday Lower Elementary School

## Areas of Improvement

e components dealing with the Common Core obejctives and assessments were the weakest areas, but you have shown provement in these areas throughout the school year.

## Next Steps

u have put a lot of work into your binder and I can see where you have improved it since earlier in the school year.  We will work  you next year on the Common Core to strengthen those two areas, but this was a very good binder.

## Scoring

rage components' ratings:   3.43   Effective: Proficient

_____
Evaluator Signature

_____
Employee Signature

_____
7-15-15
Date

_____
7-15-2015
Date

GBRE, Extra Duty                                              Page 1 of 1

FILE:  GBRE

**EXTRA DUTY**

The Concordia Parish School Board recognizes that teachers must be required to perform duties other than classroom teaching. It is recognized that student clubs, school papers, annuals, athletics and supervision of playgrounds, school buses and other activities under the supervision of the school are and should be the responsibility of the principal and his/her faculty. Principals are therefore required and directed to assign these duties equitably among the various members of their staff. The professional guidance of all student activities in a school is essential to the total growth and development of the pupils of a school.

Ref:     La. Rev. Stat. Ann. §17:81

Concordia Parish School Board



**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A PUBLIC HEARING HELD ON THURSDAY, MAY 21, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in a Public Hearing at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, May 21, at 6:00 P.M. The Public Hearing was called to order by Mr. Raymond Riley, Sr., who turned the floor over to Mr. Tom O'Neal, Director of Business Affairs.  Mr. O'Neal explained the purpose of the hearing which was to discuss the Ad Valorem Tax Millages for 2015, and to allow public input.  Mr. O'Neal explained the amounts of the millages as follows:

Constitutional                          2.84

Additional Construction and Operations 12.41

Maintenance and Operation of System   25.00

The Board solicited questions from the public.  There were no questions.  It was moved by

Mr. Butcher, seconded by Ms. Campbell and carried unanimously to adjourn at 6:09 P.M.

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A REGULAR MEETING HELD ON THURSDAY, MAY 21, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in Regular Session at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, May 21, at 6:09 P.M. The meeting was called to order by Mr. Raymond Riley, Sr., who after prayer and the Pledge, declared that the Board was ready for the transaction of business.

Members present were Mr. Ronnie Bradford, Mr. Fred T. Butcher, Ms. Mary Campbell, Mr. Jeffery Goodman, Mr. John Bostic, Mr. Rickey Raven and Mr. Raymond Riley.

Members absent was Ms. Cheryl Probst and Mr. Warren Enterkin.

The Board recognized the following:

Dorothy Parker, Director of Federal Programs, for receiving the National Association of Federal Education Program Administrators Outstanding State Leadership Award presented in Washington, D. C. — Ms. Janet Kline Clark, NAFEPA Board Member/Representative.

Angelica Luttrull — Special Olympic T-Shirt Contest Winner.

Joyce Russ, Principal of Ferriday Upper Elementary School — Jeannine Reeves, Ferriday Garden Club.

Committee reports were provided by each committee chairperson.

It was moved by Mr. Raven, seconded by Mr. Bradford and carried unanimously to approve the minutes of April 9, 2015.

It was moved by Mr. Raven, seconded by Mr. Goodman and carried unanimously to approve invoices in the amount of $3,327,831.00.

It was moved by Mr. Butcher, seconded by Mr. Bradford and carried unanimously to approve the resolution for the adoption of the tax millages for 2015 as follows:

**RESOLUTION**

**BE IT RESOLVED,** that the following millage(s) is hereby levied on the 2015 tax roll, on all property subject to taxation by the Concordia Parish School Board.

Ex. 12
DEPOSITION
EXHIBIT
PENGAD 800-631-6989

2015-05-21

MILLAGE

| | |
|---|---|
| 1) Constitutional | 02.84 Mills |
| 2) Additional support for maintaining and operating of parish schools | 25.00 Mills |
| 3) Acquiring and construction of additional classrooms and for the providing of additional support for public education | 12.41 Mills |

**BE IT FURTHER RESOLVED,** that the proper administrative officials of the Parish of Concordia, State of Louisiana, be and they are hereby empowered, authorized, and directed to spread said taxes, as hereinabove set forth, upon the assessment roll of said Parish for the year 2015, and to make the collection of the taxes imposed for and on behalf of the taxing authority, according to law, and that the taxes herein levied shall become a permanent lien and privilege on all property subject to taxation as herein set forth, and collection thereof shall be enforceable in the manner provided by law.

The foregoing resolution was read in full, the roll was called on the adoption thereof, and the resolution was adopted by the following votes:

| | |
|---|---|
| **YEAS:** | Mr. Ronnie Bradford |
| | Mr. Fred T. Butcher |
| | Ms. Mary Campbell |
| | Mr. Jeffery D. Goodman |
| | Mr. John Bostic |
| | Mr. Rickey Raven |
| | Mr. Raymond T. Riley, Sr. |
| **NAYS:** | None |
| **ABSTAINED:** | None |
| **ABSENT:** | Mr. Warren Enterkin |
| | Ms. Cheryl Probst |

It was moved by Mr. Goodman, seconded by Mr. Bostic and carried unanimously to approve the Budget Revision for 2014 – 2015.

It was moved by Mr. Raven, seconded by Mr. Bradford and carried unanimously to approve the Utility Right-of-way request on School Board Indemnity property Section 7, T9N, R10E (Lake St. John).

Acknowledge receipt of Notice of Surface operations by Wilcox Energy Company, Natchez (State Mineral Lease No. 21374) (School Indemnity Land Sections 14, 15, & 16, T3N,R7E -- shared ownership Concordia Parish School Board 65.78%, Avoyelles Parish School Board 34.22%) was given by Mr. O'Neal.

It was moved by Mr. Goodman, seconded by Mr. Butcher and carried to approve the Pre-K Program at Concordia Parish Academy. Roll call vote is as follows:

| | |
|---|---|
| Mr. Ronnie Bradford | No |
| Mr. Fred T. Butcher | Yes |
| Ms. Mary Campbell | No |

| Mr. Jeffery Goodman | Yes |
| Mr. John Bostic | Yes |
| Mr. Rickey Raven | No |
| Mr. Raymond Riley | Yes |

It was moved by Mr. Butcher, seconded by Mr. Bostic and carried unanimously to approve the Summer School Schedule. Mr. Butcher requested that all principals send to the superintendent copies of letters sent home to parents regarding summer school.

It was moved by Mr. Bostic, seconded by Mr. Bradford and carried unanimously to approve the Technology Enhancement Project – Phase 2.

It was moved by Mr. Bostic, seconded by Mr. Goodman and carried unanimously to approve the Standardizing Professional Development rates for certified staff at $20 per hour and $10 per hour for non-certified staff effective July 1, 2015.

It was moved by Mr. Raven, seconded by Mr. Bradford and carried unanimously to approve the Concordia Sentinel Newspaper as the official Journal of the Concordia Parish School Board.

The following personnel announcements were made:

A. **Personnel: Administrator Transfers**

**Rick Brown, principal, Vidalia High School, to principal, Ferriday Lower Elementary School, effective July 1, 2015.**

**Bobbie Hinson, principal, Ferriday Lower Elementary School, to principal, Ferriday Junior High School, effective July 1, 2015.**

**Arlana Davis, principal, Ferriday Junior High School, to principal, Vidalia Lower Elementary School, effective July 1, 2015.**

**Charles Anderson, principal, Vidalia Lower Elementary School, to principal, Vidalia High School, effective July 1, 2015.**

**Leaves:**

Paula Paul, technology coordinator, Central Administration, extended sick leave upon exhaustion of accumulated sick leave, effective April 29, 2015 – June 22, 2015.

Viola Armstrong, school food service technician, Ferriday High school, extended medical leave upon exhaustion of accumulated sick leave, effective May 1, 2015 – May 20, 2015.

Sharon Davis, teacher, Ferriday Junior High School, extended medical leave upon exhaustion of accumulated sick leave, effective April 30, 2015 – May 20, 2015.

**Appointments:**

Sheila Lewis, Pupil Appraisal social worker, Special Populations, effective July 21, 2015.

Chiquita Gaylor, teacher, Ferriday High School, effective August 4, 2015.

Darlene Gilbert, talented music teacher, Special Populations, effective August 4, 2015.

Kristle Messer, school secretary, Vidalia Lower Elementary School, effective May 8, 2015.

Tanner Trant, teacher, Vidalia High School, effective August 4, 2015.

Gary Rhems, central office maintenance (A/C refrigeration) effective April 13, 2015.

Devonte' Schiele, 12 month janitor, Vidalia Lower Elementary School, to 12 month custodian, Vidalia Lower Elementary school, effective June 1, 2015.

Cynthia Chatman, 2.5 hr/9 month sweeper, Ferriday Lower Elementary School, to 5 hr/9 month janitor, Ferriday Lower Elementary School, effective August 4, 2015.

**Transfers:**

Jennifer Breeland, teacher, Ferriday Junior High School, to teacher, Vidalia High School, effective August 4, 2015.

**Retirements:**

Sylvia Ritchie, talented music teacher, Special Populations, effective May 21, 2015.

Dianne Shannon, custodian, Vidalia Lower Elementary School, effective June 30. 2015.

Lydia Evans, paraprofessional, Ferriday Junior High School, effective April 9, 2015.

Odessa Freeman, school food service manager, CPAMST, effective October 16, 2015.

Betty Faulkenberry, paraprofessional, Vidalia Junior High School, effective April 9, 2015.

Mary Cupit, teacher, Vidalia High School, effective May 21, 2015.

**Resignations:**

Elbert Lyles, administrative assistant, Ferriday Junior High School, effective June 5, 2015.

Dustin Birley, central office maintenance (A/C refrigeration), effective April 8, 2015.

Shannan McCalip, teacher, Vidalia High School, effective May 21, 2015.

Cesar Cruz, teacher, Ferriday Junior High School, effective May 21, 2015.

Tonya Pardue, teacher, Monterey High School, effective May 21, 2015.

Ladonna Cooper, teacher, Monterey High School, effective May 21, 2015.

Cleothis Cummings, teacher / head football coach, Ferriday High School, effective June 5, 2015.

**Dr. Paul Nelson made the following announcements:**

Our system will be closed on Monday, May 25, 2015, in observance of Memorial Day.

The summer school staff will meet on Tuesday, May 26, 2015, and the students will begin on Wednesday, May 27, 2015.

It was moved by Mr. Butcher, seconded by Mr. Bostic and carried unanimously to adjourn at 7:15 P.M.

2015-06-11

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A REGULAR MEETING HELD ON THURSDAY, JUNE 11, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in Regular Session at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, June 11, 2015, at 6:00 P.M. The meeting was called to order by Mr. Raymond Riley who after prayer and the pledge, declared that the Board was ready for the transaction of business.

Members present were Mr. Warren Enterkin, Ms. Mary Campbell, Mr. Fred T. Butcher, Mr. Ronnie Bradford, Mr. Raymond Riley, Ms. Cheryl Probst, Mr. John Bostic, Mr. Jeffery Goodman and Mr. Rickey Raven.

Committee reports were provided by each committee chairperson.

It was moved by Mr. Bradford, seconded by Mr. Butcher and carried to approve the minutes of May 21, 2015.

Ms. Campbell did not approve the personnel portion of the minutes regarding administrative tranfers.

It was moved by Mr. Butcher, seconded by Mr. Enterkin and carried unanimously to approve invoices in the amount of $3,917,732.

It was moved by Mr. Raven, seconded by Mr. Bradford to add an item to the agenda for the We Care Group to speak.  Motion failed seven to one.  Roll call vote is as follows:

> Mr. Ronnie Bradford – Yes
> Mr. Fred T. Butcher – No
> Ms. Mary Campbell – Yes
> Mr. Warren Enterkin – Yes
> Mr. Jeffery Goodman – Yes
> Mr. John Bostic – Yes
> Ms. Cheryl Probst – Yes
> Mr. Rickey Raven – Yes
> Mr. Raymond Riley – Abstain

It was moved by Mr. Raven, seconded by Mr. Bradford to add an item to the agenda for the concerned citizens from Vidalia to speak.  Motion failed seven to one.  Roll call vote is as follows:

> Mr. Ronnie Bradford – Yes
> Mr. Fred T. Butcher – No
> Ms. Mary Campbell – Yes
> Mr. Warren Enterkin – Yes
> Mr. Jeffery Goodman – Yes
> Mr. John Bostic – Yes
> Ms. Cheryl Probst – Yes
> Mr. Rickey Raven – Yes
> Mr. Raymond Riley – Abstain

It was moved by Mr. Butcher, seconded by Mr. Bostic for both groups be added to the agenda for the July board meeting.  Mr. Raven asked if there could be a meeting before the July's board meeting. Mr. Bostic stated that the board should let the public speak if there is an issue of concern.

Mr. Butcher amended his motion in favor of having a special meeting.

It was moved by Mr. Butcher, seconded by Mr. Bostic for both groups' leader/spokesperson to get with the Superintendent and Mr. Riley after tonight's board meeting to set a date to have a special board meeting on next week.  The school board attorney will be present for the special meeting.

It was moved by Mr. Bradford, seconded by Mr. Bostic and carried unanimously to approve the renewal of membership with the District Cooperative of Louisiana.

2015-06-11                                                        Page 2 of 3

It was moved by Mr. Raven, seconded by Mr. Butcher and carried unanimously to approve homecoming dates for all three high schools with early dismissal of 12:30 p.m.

> Ferriday High School - September 25, 2015
> Vidalia High School - October 9, 2015
> Monterey High School - November 6, 2015

The following personnel announcements were made:

**A. Personnel: Assistant Principal Transfers**

**Jana Lincecum, assistant principal, Vidalia High School, to assistant principal, Monterey High School, effective July 1, 2015.**

**Melissa Doughty, assistant principal, Ferriday Lower Elementary School, to assistant principal, Ferriday Upper Elementary School, effective July 1, 2015.**

**Betty Johnson, assistant principal, Vidalia Lower Elementary School, to assistant principal, Vidalia Upper Elementary School, effective July 1, 2015**

**Julia Walker, assistant principal, Vidalia Upper Elementary School, to assistant principal, Vidalia Lower Elementary School, effective July 1, 2015.**

**Godfrey Carson, administrative assistant, Ferriday Upper Elementary School, to administrative assistant, Ferriday Lower Elementary School, effective July 1, 2015.**

**Elizabeth Walker, assistant principal, Monterey High School, to assistant principal, Vidalia High School, effective July 1, 2015.**

**B. Other Personnel Issues**

**C. Agendas for other Committees**

**Transfers:**

Caissidy Riley, teacher, Ferriday Lower Elementary School, to teacher, Concordia Parish Academy of Math, Science and Technology, effective August 4, 2015.

LaShinda Nix, paraprofessional, Ferriday Lower Elementary School, to paraprofessional, Concordia Parish Academy of Math, Science and Technology, effective August 4, 2015.

Stephen Bush, custodian, Vidalia High School, to custodian, Vidalia Lower Elementary School, effective June 22, 2015.

Devonte' Schiele, custodian, Vidalia Lower Elementary School, to custodian, Vidalia High School, effective June 22, 2015.

**Appointments:**

Megan Preis, teacher, Vidalia High School, effective August 4, 2015.

Drew Mestelske, teacher, Ferriday High School, effective August 4, 2015.

Brian Cerniglia, teacher, Vidalia High School, effective August 4, 2015.

Cynthia Barnes, teacher, Ferriday High School, effective August 4, 2015.

Walter Johnson, paraprofessional, Ferriday High School, effective August 4, 2015.

Brett Orren, teacher, Vidalia High School, effective August 4, 2015.

Robert O'Steen, 8 hour/12 month janitor, Vidalia Lower Elementary School, effective June 22, 2015.

Larry Woods, Jr., paraprofessional, Ferriday Upper Elementary School, effective August 4, 2015.

**Dr. Paul Nelson made the following announcements:**

The last day for the summer school program will be June 18, 2015.

LAA 2 and End of Course testing will be held on June 22 – 25, 2015.

Mr. Raymond Riley thanked everyone who attended and participated in the Retirement Celebration held on June 10, 2015.

It was moved by Mr. Butcher, seconded by Ms. Probst and carried unanimously to adjourn at 6:20 P.M.

2015-06-18 SP

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA , STATE OF LOUISIANA, TAKEN AT A SPECIAL MEETING HELD ON THURSDAY, JUNE 18, 2015.**

The School Board of the Parish of Concordia, State of Louisiana, met in Special Session at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, June 18, at 6:00 P.M. The meeting was called to order by Mr. Raymond Riley, who after prayer and the Pledge, declared that the Board was ready for the transaction of business.

Members present were Mr. Ronnie Bradford, Mr. Warren Enterkin, Ms. Cheryl Probst, Mr. John Bostic, Mr. Jeffery Goodman, Mr. Rickey Raven and Mr. Raymond Riley, Sr.

Mr. Fred T. Butcher arrived at 6:04 p.m.

Member absent was Ms. Mary Campbell.

The We Care group spokesperson, Bishop Justin Conner, stated that the group has some concerns about the Ferriday Schools. Bishop Conner has concerns about the below average reading ability of the students in the Ferriday area schools. He asked the board members for help in establishing a bi-racial committee to help address these concerns. He also asked the superintendent if there is a three to five year action plan in place to improve test scores and students' performance.

The Superintendent stated that there is an action plan but, there have been a lot of changes from the state department since 2012 regarding performance-based tests.

Bishop Conner asked if the school board could bring back the ROTC program for the junior high and high school, along with the Accelerated Reading program. If possible, he would like to see changes made at the Concordia Education Alternative Center to include stricter rules/regulations that would make students want to stay in the regular school setting rather than to go to the CEC.

Mr. Riley stated that he had previously spoken with Bishop Conner to approve for Mr. James E. Lee to also speak on behalf of We Care.

Mr. James E. Lee stated that the We Care education sub-committee would like to see the goals of the three to five year action plan for each school in Ferriday. He stated that the sub-committee wanted to participate in planning activities to help address the goals of the action plan. He also asked the superintendent to meet with them as soon as possible. The We Care group asked to be placed on the agenda each month to give committee report updates.

Mr. Riley thanked the We Care group for their presentation.

Mr. Paul Cangemi, representative for the Vidalia parents, asked the superintendent to reverse his decision to transfer Mr. Rick Brown from Vidalia High School to Ferriday Lower Elementary School. He stated that Mr. Brown was reassigned to Ferriday Lower Elementary after 17 years as principal at Vidalia High School. He also stated that Mr. Brown had a couple more years before retirement. Mr. Cangemi asked could Dr. Nelson be removed from the position of superintendent.

Mr. Cangemi asked the board if the moves Dr. Nelson made were justified. He asked that the board look into the transfers to see if they were in the best interest of the students. He wanted to know if the board was included in making these administrative transfers. He did not believe that everyone agrees with Dr. Nelson's decisions. Mr. Cangemi was concerned that all of the Louisiana educational state standards were not being followed and began to say how it is expected that a superintendent should be ethical. Mr. Raymond Riley, board president, interrupted and told him he had crossed the line.

Mr. Jon Guice, school board attorney, told Mr. Cangemi when it comes to the personnel decisions, the superintendent has the authority to make those decisions. Mr. Guice also stated that the power to move personnel rests solely with the superintendent and that the board could not interfere.

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A REGULAR MEETING HELD ON THURSDAY, JULY 9, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in Regular Session at the Concordia Parish School Board office in Vidalia, Louisiana, on Tuesday, July 9, 2015, at 6:00 P.M. The meeting was called to order by Mr. Raymond Riley who after prayer and the Pledge, declared that the Board was ready for the transaction of business.

Members present were Mr. Warren Enterkin, Ms. Mary Campbell, Mr. Fred T. Butcher, Mr, Ronnie Bradford, Mr. Jeffery Goodman, Ms. Cheryl Probst, Mr. Raymond Riley, Mr. Rickey Raven and Mr. John Bostic.

Committee reports were provided by each committee chairperson.

It was moved by Mr. Bradford, seconded by Mr. Raven and carried to approve the minutes of June 11, 2015 and June 18, 2015.

Ms. Campbell did not approve the personnel portion of the minutes regarding administrative transfers.

It was moved by Mr. Butcher, seconded by Ms. Probst and carried unanimously to approve invoices in the amount of $6,364,641.

Mr. Tom O'Neal gave a summary report on the construction of the Ferriday Junior High School gym.

Mr. Tom O'Neal made the announcement of Board's intention to adopt its 2015 ad valorem property tax millage rates at the Regular Scheduled Meeting of the Board on August 13, 2015. The notice will be published in the paper on next week.

It was moved by Mr. Butcher, seconded by Mr. Bostic and carried for the superintendent to take under advisement and bring back to the board with a plan regarding the need for additional administrative help at the Concordia Parish Academy of Math, Science & Technology.

Let the record show that Mr. Rickey Raven did not agree, he voted no.

It was moved by Mr. Butcher, seconded by Mr. Raven to enter into Executive Session at 6:55 P.M. to discuss the Superintendent's Evaluation Results.

It was moved by Ms. Campbell, seconded by Ms. Probst and carried unanimously to return to Regular Session at 7:50 P.M.

**The following Personnel Announcements were made:**

**Leaves:**

Meghan Wilson, teacher, Monterey High School, maternity leave / extended medical leave upon exhaustion of accumulated sick leave days, effective August 4, 2015 – September 11, 2015.

Hannah Taylor, teacher, Ferriday Upper Elementary School, maternity leave / extended medical leave upon exhaustion of accumulated sick leave days, effective August 4, 2015 – September 7, 2015.

Debra Wilkinson, Educational Strategist, Special Populations, extended medical leave upon exhaustion of accumulated sick leave days, effective March 18, 2015 – May 20, 2015.

**Retirements:**

Monica Carter, teacher, Ferriday Lower Elementary School, effective July 2, 2015.
Bobbie Hinson, principal, Ferriday Junior High School, effective June 29, 2015.
Rickie Brown, principal, Ferriday Lower Elementary School, effective July 10, 2015.

2015-07-09                                                                Page 2 of 2

**Resignations:**

Donna Hugg, teacher, Vidalia High School, effective July 31, 2015.
Victoria Marling, teacher, Vidalia Lower Elementary School, effective July 31, 2015.
James Davis, principal, Ferriday High School, effective July 10, 2015.
Laura Elliott, teacher, Vidalia Junior High School, effective June 23, 2015.
Laren Hammond, speech pathologist, Special Populations, effective July 1, 2015.
Terrysa Roy, teacher, Concordia Education Center, effective June 16, 2015.
Marcus Smith, 12 month / 8 hour janitor, Vidalia High School, effective July 15, 2015.
Kayce Hinson, paraprofessional, Vidalia Junior High School, effective July 2, 2015.

**Appointments:**

Jennifer Betts, speech pathologist, Special Populations, effective August 4, 2015.
Leslie Hughes, speech pathologist, Special Populations, effective August 4, 2015.
Floyd Barber, central office maintenance, to job training technician, Concordia Education Center, effective August 4, 2015 – May 20, 2016.
Dwight Woods, Physical Education teacher / head football coach, Ferriday High School, effective July 1, 2015.
Susie L. Shephard, 8 hours/12 months custodian, Central Office, effective July 27, 2015.

**Transfers:**

Robert Faircloth, Social Studies teacher / head track coach, Monterey High School, to Social Studies teacher, Vidalia High School, effective August 4, 2015.
Dorothy Jenkins, Special Education teacher, Ferriday Lower Elementary School, to Special Education teacher, Ferriday Upper Elementary School, effective August 4, 2015.
Hannah Taylor, Special Education teacher, Ferriday Upper Elementary School, to Special Education teacher, Monterey High School, effective August 4, 2015.
Christen West, Physical Education teacher / head girls' basketball coach, Ferriday Junior High School, to Physical Education teacher / head girls' basketball coach, Vidalia High School, effective August 4, 2015.

**Dr. Paul Nelson made the following announcements:**

Principals will return to work on Monday, July 13, 2015.
Administrator University will be held on July 22 – 24, 2015, at the Concordia Parish School Board Central Office beginning at 8:00 a.m.
Tech Day will be held on August 3, 2015, at Vidalia High School beginning at 8:00 a.m.
A schedule of the Back to School Staff Development to be held on August 4 & 5, 2015, at the Vidalia Conference & Convention Center will be in this week's FYI.
Due to school opening on Monday, August 10, 2015, the committee meetings will be held on Tuesday, August 11, 2015.

It was moved by Ms. Probst, seconded by Mr. Bostic and carried unanimously to adjourn at 7:52 P.M.

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A PUBLIC HEARING HELD ON THURSDAY, AUGUST 13, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in a Public Hearing at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, August 13, 2015, at 6:00 P.M. The Public Hearing was called to order by Mr. Raymond Riley, Sr. who turned the floor over to Mr. Tom O'Neal, Director of Business Affairs. Mr. O'Neal explained the purpose of the hearing which was to discuss the Ad Valorem Tax Millages for 2015, and to allow public input. Mr. O'Neal explained the amounts of the millages as follows:

Constitutional                    2.84

Additional Construction and Operations 13.00

Maintenance and Operation of System  25.00

The Board solicited questions from the public. There were no questions. It was moved by Mr. Butcher, seconded by Mrs. Campbell and carried unanimously to adjourn at 6:06 P.M.

**PROCEEDINGS OF THE SCHOOL BOARD OF THE PARISH OF CONCORDIA, STATE OF LOUISIANA, TAKEN AT A REGULAR MEETING HELD ON THURSDAY, AUGUST 13, 2015**

The School Board of the Parish of Concordia, State of Louisiana, met in Regular Session at the Concordia Parish School Board office in Vidalia, Louisiana, on Thursday, August 13, 2015, at 6:06 P.M. The meeting was called to order by Mr. Raymond Riley, Sr. who after prayer and the Pledge, declared that the Board was ready for the transaction of business.

Members present were Mr. Warren Enterkin, Mr. Fred T. Butcher, Ms. Mary Campbell, Mr. Ronnie Bradford, Ms. Cheryl Probst, Mr. Raymond Riley, Mr. John Bostic and Mr. Rickey Raven.

Member absent was Mr. Jeffery Goodman.

The Board recognized School Administrators.

**Ferriday Lower Elementary**
 Julia Walker, Principal
 Sandra Burton, Assistant

**Ferriday Upper Elementary**
 Godfrey Carson, Principal
 Melissa Doughty, Assistant

**Ferriday Junior High**
 Toyua Watson, Principal
 Gloria Price, Assistant

**Ferriday High School**
 Joyce Russ, Principal
 Ricky Collins, Assistant

**Vidalia Junior High**
 Whest Shirley, Principal
 Christine Washington, Assistant

**Vidalia High School**
 Charles Anderson, Principal
 Elizabeth Walker, Assistant
 Lindy McMurtry, Admin. Asst.

**Monterey High School**
 Ralph Simmons, Principal
 Jana Lincecum, Assistant

**Concordia Education Center**
 Lillian Franklin, Principal

**Concordia Parish Academy of Math, Science and Technology**
 Nancy Anders, Director

**Vidalia Lower Elementary**
 Arlana Davis, Principal
 Sandra Scruggs Cobb, Assistant

**Vidalia Upper Elementary**

2015-08-13

Darla Johnston, Principal
Betty Johnson, Assistant

Committee reports were provided by each committee chairperson.

It was moved by Mr. Bradford, seconded by Mr. Raven and carried to approve the minutes of July 9, 2015.

Ms. Campbell did not approve the personnel portion of the minutes.

It was moved by Mr. Raven, seconded by Mr. Enterkin and carried unanimously to approve invoices in the amount of $1,503,795.

It was moved by Mr. Bradford, seconded by Mr. Bostic and carried unanimously to approve the resolution for the adoption of the tax millages for 2015 as follows:

**RESOLUTION**
**BE IT RESOLVED,** that the following millage(s) is hereby levied on the 2015 tax roll, on all property subject to taxation by the Concordia Parish School Board.

**MILLAGE**

| | | |
|---|---|---|
| 1) Constitutional | | 02.84 Mills |
| 2) Additional support for maintaining and operating of parish schools | | 25.00 Mills |
| 3) Acquiring and construction of additional classrooms and for the providing of additional support for public education | | 13.00 Mills |

**BE IT FURTHER RESOLVED,** that the proper administrative officials of the Parish of Concordia, State of Louisiana, be and they are hereby empowered, authorized, and directed to spread said taxes, as hereinabove set forth, upon the assessment roll of said Parish for the year 2015, and to make the collection of the taxes imposed for and on behalf of the taxing authority, according to law, and that the taxes herein levied shall become a permanent lien and privilege on all property subject to taxation as herein set forth, and collection thereof shall be enforceable in the manner provided by law.

The foregoing resolution was read in full, the roll was called on the adoption thereof, and the resolution was adopted by the following votes:

**YEAS:** Ronnie Bradford
        Fred T. Butcher
        Mary Campbell
        Warren S. Enterkin
        John Bostic
        Cheryl Probst
        Rickey Raven
        Raymond T. Riley, Sr.

**NAYS:** None

**ABSTAINED:** None

**ABSENT:** Mr. Jeffery Goodman

It was moved by Ms. Campbell, seconded by Mr. Bostic and carried unanimously to approve the collection agreements with the Town of Tullos for Occupational Licenses and Insurance Premium taxes.

Bids were opened as follows:

2015-08-13                                                                                    Page 3 of 5

**Janitorial Materials & Supplies:**

Vendor
All American Poly
Big M Supply Co.
BCP Jan-San Distribution
F.R. Blankenstein
Guy Paper
Parker Wholesale
Pyramid School Products

It was moved by Mr. Raven, seconded by Mr. Butcher and carried unanimously for Mr. O'Neal to take the bids under advisement and be granted the authority to award the bid.

**Duplicating Paper**

| Vendor | Bid |
|---|---|
| Big M Supply | $38,004.00 |
| Veritiv | $32,899.00 |

Mr. O'Neal reminded the Board that paper was considered a Louisiana preference product. It was moved by Ms. Campbell, seconded by Mr. Bostic and carried unanimously to take the bids under advisement and granted authority to award the bid to Mr. O'Neal.

**Extermination Services**

| Vendor | Bid |
|---|---|
| Douglas Pest Control | $480.00 per month |
| Orkin Pest Control | $491.00 per month |

It was moved by Mr. Enterkin, seconded by Mr. Bradford and carried unanimously for Mr. O'Neal to take the bids under advisement and be granted the authority to award the bid.

It was moved by Mr. Raven, seconded by Mr. Butcher to accept joint agreement with Concordia Bank & Trust Company and Delta Bank for its Fiscal Agent and Depository Bank for fiscal years 2015-2016 and 2016-2017.

It was moved by Ms. Probst, seconded by Mr. Bradford and carried unanimously to approve the 2015-2016 Pupil Progression Plan.

It was moved by Ms. Probst, seconded by Mr. Bostic and carried unanimously to approve moving September board meeting to Tuesday, September 15, 2015.

It was moved by Mr. Butcher, seconded by Mr. Bradford and carried to approve the following policy and the waiving of the First Reading of said policy.

            JR – Student Privacy and Education Records

Let the record show that Mr. Rickey Raven did not agree, he voted no.

It was moved by Mr. Bostic, seconded by Mr. Butcher and carried unanimously to approve adding the coordinator's supplement to the data specialist's salary.

Roll call vote is as follows:

            Mr. Ronnie Bradford - Yes
            Mr. Fred T. Butcher - Yes
            Ms. Mary Campbell – Yes
            Mr. Warren Enterkin – Yes
            Mr. John Bostic – Yes

2015-08-13                                                                Page 4 of 5

               Ms. Cheryl Probst – Yes
               Mr. Raymond Riley – Yes
               Mr. Rickey Raven – Yes

It was moved by Mr. Bradford, seconded by Mr. Raven to enter into Executive Session at 7:17 P.M. to discuss personnel matter.

It was moved by Ms. Campbell, seconded by Mr. Raven to return to Regular Session at 8:03 P.M.

**The following personnel announcements were made:**

A. **Personnel:**    **Administrator Appointments**

**Julia Walker, assistant principal, Vidalia Upper Elementary School, to principal, Ferriday Lower Elementary School, effective July 13, 2015.**

**Godfrey Carson, assistant principal, Ferriday Upper Elementary School, to principal, Ferriday Upper Elementary School, effective July 13, 2015.**

**Toyua Watson, principal, Ferriday Junior High School, effective July 13, 2015.**

**Joyce Russ, principal, Ferriday Upper Elementary School, to principal, Ferriday High School, effective July 13, 2015.**

**Sandra Burton, teacher, Vidalia Upper Elementary School, to assistant principal, Ferriday Lower Elementary School, effective July 21, 2015.**

**Sandra Scruggs-Cobb, assistant principal, Ferriday High School, to assistant principal, Vidalia Lower Elementary School, effective July 21, 2015.**

**Ricky Collins, teacher, Ferriday Junior High School, to assistant principal, Ferriday High School, effective July 13, 2015.**

B. **Other Personnel Issues**
C. **Agendas for other Committees**

**Leaves:**

Sharon Davis, teacher, Ferriday Junior High School, extended medical leave, effective August 4, 2015 – December 14, 2015.
Andree' McCullar, librarian, Vidalia High School, extended medical leave upon the exhaustion of accumulated sick leave days, effective August 4, 2015 – August 28, 2015.

**Retirements:**

Shelia Lanius, PreK teacher, Vidalia Lower Elementary School, effective July 31, 2015.
Paula Paul, Technology Coordinator, Central Administration, effective August 1, 2015.

**Resignations:**

William Givens, Title 1 Supervisor, Central Administration, effective July 24, 2015.
Kendra Slover, 3rd grade teacher, Ferriday Upper Elementary School, effective July 31, 2015.
Sarah Loomis, 4th grade teacher, Ferriday Upper Elementary School, effective July 31, 2015.
O'Neal Douglas, Jr., music teacher / band director, Vidalia High School/Vidalia Junior High School, effective July 31, 2015.

**Appointments:**

Evangeline Williams, 2nd grade teacher, Vidalia Lower Elementary School, effective August 4, 2015.

Susan Bowers, 3rd grade teacher, Ferriday Upper Elementary School, effective August 4, 2015.
Avis Dennis, 2nd grade teacher, Ferriday Lower Elementary School, effective August 4, 2015.
Erica Condon, math teacher, Ferriday High School, effective August 4, 2015.
Marquitta Jones, 4th grade teacher, Ferriday Upper Elementary School, effective August 4, 2015.
Joe Wallace, math teacher, Monterey High School, effective August 4, 2015.
Katie Moore, elementary alternative teacher, Concordia Education Center, effective August 4, 2015.
Shelia Hickingbottom, high school alternative teacher, Concordia Education Center, effective August 4, 2015.
Minh Nguyen, math teacher, Vidalia High School, effective August 4, 2015.
Amy Mason, Pre-K teacher, Vidalia Lower Elementary School, effective August 4, 2015.
Tiffany Paul, paraprofessional, Vidalia Lower Elementary School, effective August 4, 2015.
Kasey Azar, teacher, Vidalia Upper Elementary School, effective August 4, 2015.
Kate Boothe, Spanish teacher, CPAMST, effective August 4, 2015.
Melissa Vaughn, FACS teacher, Vidalia Junior High School, effective August 4, 2015.
Milton Smith, music teacher / band director, Vidalia High School/Vidalia Junior High School effective August 4, 2015.
Mary L. Williams, paraprofessional, Ferriday Lower Elementary School, to SPED teacher, Ferriday Junior High School, effective August 4, 2015.
Kaylnn Chumney, geometry teacher, Vidalia High School, effective August 4, 2015.
Mary B. Williams, math teacher, Ferriday High School, effective August 4, 2015.
Thelma Daniels, SPED teacher, Ferriday High School, effective August 4, 2015.
Willie F. Marsalis, Sr., part-time science teacher, Vidalia High School, effective August 4, 2015.
Ernestine Watts, 6th grade math teacher, Ferriday Junior High School, effective August 4, 2015.
Patricia Sandidge, elementary social studies teacher, Monterey High School, effective August 4, 2015.
Llwendellyn Paul, paraprofessional, Ferriday Lower Elementary School, effective August 10, 2015.
Lula James, P.E. teacher, Ferriday Junior High School, effective August 4, 2015.

**Transfers:**

Shanna Pollard, P. E. teacher, Vidalia High School, to P.E. teacher, CPAMST, effective August 4, 2015.
Jennifer Breeland, SPED teacher, Ferriday Junior High School, to SPED teacher, Vidalia High School, effective August 4, 2015.

**No Announcements were made.**

It was moved by Mr. Raven, seconded by Mr. Bradford and carried unanimously to adjourn at 8:05 P.M.



# CONCORDIA PARISH SCHOOL BOARD
P. O. Box 950
Vidalia, Louisiana 71373-0950

ul E. Nelson, Ph.D.
perintendent

Phone (318) 336-4226 ext. 35113
Fax    (318) 336-5875
pnelson@cpsbla.us

May 21, 2015

Bobbie Hinson
209 South Bluebird Drive
Natchez, MS  39120

Ms. Hinson:

Please note that I have conferred with our attorney regarding your transfer to Ferriday Junior High School. In our conversation on May 19, 2015, you stated that you would not attend any extracurricular activities. Your attendance and supervision at such events are in fact part of your job responsibilities as principal there, and you should make plans to fulfill that responsibility as required by your job description.

Sincerely,

Paul E. Nelson, Ph.D.
Superintendent

XC:    Dr. Wilson, Director of Secondary Education

PENGAD 800-631-6989

Ex. 1b

DEPOSITION
EXHIBIT

Exhibit 2                                                87 of 102

# CONCORDIA PARISH SCHOOL BOARD
## P. O. BOX 950
## VIDALIA, LA  71373

Paul E. Nelson, Ph.D.
Superintendent

Phone (318) 336-4226
Fax (318) 336-5875

May 22, 2015

Ms. Bobbie Hinson
209 South Bluebird Drive
Natchez, MS  39120

Dear Ms. Hinson:

This is to advise that on May 21, 2015, your transfer as Principal, Ferriday Lower Elementary, to Principal, Ferriday Junior High, was announced at the Concordia Parish School Board meeting, effective July 1, 2015.

Sincerely,

Paul E. Nelson, Ph.D.
Superintendent

PEN:jjc

xc:    Mrs. Gloria Dangerfield
       Mrs. Rhonda Moore
       Ms. Patricia Gousset
       Ms. Kaci Cothern
       Ms. Sarah Caviness
       Mrs. Bobbie Hinson
       Personnel File



17
DEPOSITION
EXHIBIT

PENGAD 800-631-6989

Exhibit 2                                                88 of 102

# DENNIS LARAVIA, MD, LLC

Dennis LaRavia, MD
Surgery of the Skin, Dermatology, and Allergy
drdennislaravia@gmail.com
FAX 318-336-0974
Phone 318-719-1993
1637 Carter Street
Vidalia, LA 71373

## FAX: 318-336-0924

To: Dr. P. Nelson          Fax: 318 336-5875

From: Dr LaRavia

Re:

Number of copies (with cover):

Date: 5-28-15

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender, which is protected by the doctor-patient privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone to arrange for return of the documents.



18
DEPOSITION
EXHIBIT

Exhibit 2                                          89 of 102

*(318) 336 - 5875*



# DENNIS LARAVIA, MD

Dr. Paul Nelson                    May 28, 2015

Superintendent, Concordia Parish School Board

Vidalia, LA   71373


Dear Dr. Nelson:

I saw Ms. Bobbie Hinson today for multiple medical problems and I have asked her to go on Medical Leave beginning June 1 until August 2015.  I will reassess her progress in a few weeks.  Thanks for your support of her medical care.


Sincerely,

Dennis LaRavia, MD


637  CARTER STREET
IDALIA, LOUISIANA
1˙ ˙3

Exhibit 2                                                                 90 of 102

 

**Rhonda Moore**

| From: | Bobbie Hinson [bhinson@cpsbla.us] |
|-------|-----------------------------------|
| Sent: | Friday, May 29, 2015 10:32 AM |
| To: | pnelson@cpsbla.us; Rhonda Moore |
| Subject: | Medical Leave |

May 29, 2015

Dr. Paul Nelson

I am sending this email to let you know that following my doctor's appointment on yesterday, May 28th, under the advice of my doctor, he requested that I go on medical leave due to ongoing health concerns for the duration of the summer and potentially through the beginning of the next school year.

You should be receiving correspondence in reference to this medical leave from my doctor within a day or two.

Also, I received your letter regarding the duties and responsibilities of a junior high principal. I would like to be clear that it is my intent to maintain my duties as a principal; however, as I tried to explain to you, I do have health issues that prevent extended extra curriculum activities. Since that there are several elementary school positions, within the Concordia Parish School System, it would be my hope that in planning staffing for the 2015-16 school year, you will consider my overall health concerns. My duties as an elementary principal at FLE are not prohibited by my health.

I am at FLE today finalizing my duties as principal.





1

461-2015-01672   Bobbie N. Hinson

Exhibit 2

91 of 102

**From:**                           Paul Nelson <pnelson@cpsbla.us>
**Sent:**                         Friday, May 29, 2015 10:55 AM
**To:**                               'Bobbie Hinson'
**Cc:**                               rmoore@cpsbla.us; rwhite@cpsbla.us
    **bject:**                      RE: Medical Leave

Ms. Hinson:

I am including Rhonda Moore in on this email as there will probably be more paperwork required for any type of medical leave. It goes without saying that your absence does present a problem as there are a number of things that need to be done at FJHS this summer, but we(Dr. Wilson & I) will take a look and see how we can cover it.

There are no open elementary principal positions in the parish at this time; however, should one come open I will consider you for that position. In the interim, I would hope that you would work to complete all of the responsibilities of your job description regardless of site location.

Thanks,
PEN

Paul E. Nelson, Ph.D.
Superintendent
Concordia Parish Schools
4358 Highway 84 West
Vidalia, LA 71373
318-336-4226
318-336-5875(fax)



"Give the world the best you have and it may never be enough. Give your best anyway."

Mother Teresa

**From:** Bobbie Hinson [mailto:bhinson@cpsbla.us]
**Sent:** Friday, May 29, 2015 10:32 AM
**To:** pnelson@cpsbla.us; Rhonda Moore
**Subject:** Medical Leave

May 29, 2015

Dr. Paul Nelson
I am sending this email to let you know that following my doctor's appointment on yesterday, May 28th, under the advice of my doctor, he requested that I go on medical leave due to ongoing health concerns for the duration of the summer and potentially through the beginning of the next school year.

You should be receiving correspondence in reference to this medical leave from my doctor within a day or two.

*Ex. 20*
DEPOSITION
EXHIBIT
PENGAD 800-631-6989

```
 1                          REPORTER'S PAGE

 2          I, LINDA PEROT, Certified Court Reporter No. 23012, in

 3     and for the State of Louisiana, the officer, as defined in

 4     Rule 28 of the Louisiana  Rules of Civil Procedure and/or

 5     Article 1434(B) of the Louisiana Code of Civil Procedure,

 6     before whom this proceeding was taken, do hereby state on the

 7     Record:

 8

 9          That due to the interaction in the spontaneous discourse

10     of this proceeding, dashes (--) have been used to indicate

11     pauses, changes in thought, and/or talkovers; that same is

12     the proper method for a Court Reporter's transcription of

13     proceeding, and that the dashes (--) do not indicate that

14     words or phrases have been left out of this transcript;

15

16          That any words and/or names which could not be

17     verified through reference material have been denoted with

18     the phrase "(spelled phonetically)."

19

20     _____

21     LINDA PEROT, CCR No. 23012

22

23

24

25
```

# Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                        93 of 102

1           **CERTIFICATE**

2           This certification is valid only for a transcript

3      accompanied by my original signature And required official

4      seal stamped on this certificate.

5           I, LINDA PEROT, Certified Court Reporter, Certificate

6      No. 23012, as the officer before whom this testimony was

7      taken, do hereby certify that **PAUL NELSON**, after having been

8      duly sworn by me upon authority of R.S. 37:2554, did appear

9      on July 18, 2017, commencing at 1:29 p.m., and concluding at

10     4 p.m., as hereinbefore set forth in the foregoing pages;

11     that this testimony was reported by me in the stenomask

12     reporting method, was prepared and transcribed by me or under

13     my personal direction and supervision, and is true and

14     correct to the best of my ability and understanding; that the

15     transcript has been prepared in compliance with the

16     transcript format guidelines required by statute and rules of

17     the Board; that I am informed about the complete arrangement,

18     financial or otherwise, with the person or entity making

19     arrangements for deposition services; that I have acted in

20     compliance with the prohibition on contractual relationships,

21     as defined by Louisiana Code of Civil Procedure Article 1434

22     and rules and advisory opinions of the Board; that I have no

23     actual knowledge of any prohibited employment or contractual

24     relationship, direct or indirect, between a court reporting

25     firm and any party litigant in this matter, nor is there any

# Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    94 of 102

1   such relationship between myself and a party litigant in this

2   matter; that I am not related to counsel or to any of the

3   parties hereto, I am in no manner associated with counsel for

4   any of the interested parties to this litigation, and I am in

5   no way concerned with the outcome thereof.

6       West Monroe, Louisiana, on this the 25th day of July

7   2017.

8

9

10

LINDA PEROT, CCR
STATE OF LOUISIANA
11  CERTIFICATE NO. 23012

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Linda Perot, CCR

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                95 of 102

```
1                        PAUL NELSON, Ph.D.,

2    having previously been administered an oath, was examined and

3    testified as follows:

4              MR. WALTERS:

5                   Dr. Nelson, we left off at the last deposition

6              going through some exhibits, and I'm going to get

7              into a few more with you.  It shouldn't be that

8              long, --

9              WITNESS:

10                  Okay.

11             MR. WALTERS:

12                  -- not nearly as long as the last deposition.

13                        EXAMINATION

14   BY MR. WALTERS:

15   Q    Now, a couple of things I wanted to clear up from the

16        last deposition.  At the time Mr. Rick Brown or

17        Ricky Brown was transferred to Ferriday Lower

18        Elementary, at that time he did not have any substantial

19        limitations in his ability to perform the work duties at

20        Ferriday Lower Elementary based on any physical

21        condition, medical condition or disabling or disability

22        condition that you are aware of.  Is that correct?

23   A    No.  There was no problems of that nature that I'm

24        familiar with.

25   Q    Okay.  Now, according to your testimony in the last
```

*Linda Perot, CCR*

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                    96 of 102

| | | |
|---|---|---|
| 1 | | Sick Leave," is it? |
| 2 | A | Yes.  It's under the definitions.  That's page -- |
| 3 | Q | Okay. |
| 4 | A | This is the top of page 3, so -- |
| 5 | Q | All right. |
| 6 | A | So it's right there. |
| 7 | Q | Okay.  But in any event, the information that you got |
| 8 | | from the physician and from Ms. Hinson was sufficient |
| 9 | | for you to go ahead and grant her sick leave prior to |
| 10 | | the date of her retirement, in your opinion? |
| 11 | A | Well, I was going to go ahead and grant it simply |
| 12 | | because I knew that Ms. Hinson was upset about her move, |
| 13 | | and I basically knew that she had extended -- well, she |
| 14 | | had sick leave days in her bank.  And so, you know, |
| 15 | | under the board policy, an employee can miss up to six |
| 16 | | days without having to provide an excuse.  And so, if |
| 17 | | her doctor had already sent the note saying that he was |
| 18 | | recommending she be on convalescence, then I was just |
| 19 | | going to let it go at that point. |
| 20 | Q | And you don't grant sick leave like that that you had |
| 21 | | granted to -- or were going to grant to Ms. Hinson |
| 22 | | absent some medical condition that limits a person's |
| 23 | | ability to work.  Is that correct? |
| 24 | A | That's correct.  And, you know, every other case that I |
| 25 | | was involved in that that leave was granted to an |

*Linda Perot, CCR*

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                                                 97 of 102

```
 1              Okay.  Great.
 2         MR. WALTERS:
 3              "Exhibit 24."
 4    Q    I'm going to show you a document, and this is to you.
 5         It appears to be signed by Ms. Hinson, and it says that,
 6         "Dear Dr. Nelson:  Accept this letter of retirement from
 7         my position of principal at Ferriday Lower Elementary
 8         effective June 29, 2015."  Do you recognize that letter?
 9    A    I do.
10    Q    Okay.  That's the one you received from Ms. Hinson?
11    A    That's correct, yeah.  She was not technically principal
12         of Ferriday Lower at that point, but -- I don't guess.
13         But, yes.  Yeah, that's my initials.  And that's how
14         things normally would be handled when somebody would
15         send in a letter requesting leave or retirement and so
16         forth.
17    Q    Okay.  And so, this at the bottom, this handwriting
18         below her signature at the bottom left side of the page
19         is your initials and you dated it 6-29-15.  Is that
20         correct?
21    A    Yes.  That's mine.
22    Q    Okay.  And so, at the time this letter was sent on
23         June 29th, 2015, and you received it on June 29th, 2015,
24         at that point you had already made the decision to
25         approve her for medical leave based on all the
```

*Linda Perot, CCR*

June 29, 2015
Dr. Paul Nelson
4358 Hwy 84West
Vidalia, LA 71313

Dear Dr. Nelson:

Accept this letter of retirement from my position of principal at Ferriday Lower Elementary effective June 29, 2015.

Sincerely,

Bobbie Hinson



Ex. 24

Exhibit 2                    99 of 102

1    **REPORTER'S PAGE**

2    I, WANDA J. EADY, Certified Court Reporter No. 87255, in

3    and for the State of Louisiana, the officer, as defined in

4    Rule 28 of the Louisiana Rules of Civil Procedure and/or

5    Article 1434(B) of the Louisiana Code of Civil Procedure,

6    before whom this proceeding was taken, do hereby state on the

7    Record:

8

9    That due to the interaction in the spontaneous discourse

10   of this proceeding, dashes (--) have been used to indicate

11   pauses, changes in thought, and/or talkovers; that same is

12   the proper method for a Court Reporter's transcription of

13   proceeding, and that the dashes (--) do not indicate that

14   words or phrases have been left out of this transcript;

15

16   That any words and/or names which could not be

17   verified through reference material have been denoted with

18   the phrase "(spelled phonetically)."

19

20   _____

21   WANDA J. EADY, CCR No. 87255

22

23

24

25

*Linda Perot, CCR*

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2                                   100 of 102

## CERTIFICATE

1     This certification is valid only for a transcript

2 accompanied by my original signature and required official

3 seal stamped on this certificate.

4     I, WANDA J. EADY, Certified Court Reporter, Certificate

5 No. 87255, as the officer before whom this testimony was

6 taken, do hereby certify that **PAUL NELSON, Ph.D.**, after

7 having been duly sworn previously upon authority of

8 R.S. 37:2554, did appear on October 26, 2017, commencing at

9 10:14 a.m., and concluding at 11:12 a.m., as hereinbefore set

10 forth in the foregoing pages; that this testimony was

11 reported by me in the penwriter reporting method, was

12 prepared and transcribed by me or under my personal direction

13 and supervision, and is true and correct to the best of my

14 ability and understanding; that the transcript has been

15 prepared in compliance with the transcript format guidelines

16 required by statute and rules of the Board; that I am

17 informed about the complete arrangement, financial or

18 otherwise, with the person or entity making arrangements for

19 deposition services; that I have acted in compliance with the

20 prohibition on contractual relationships, as defined by

21 Louisiana Code of Civil Procedure Article 1434 and rules and

22 advisory opinions of the Board; that I have no actual

23 knowledge of any prohibited employment or contractual

24 relationship, direct or indirect, between a court reporting

*Linda Perot, CCR*

177

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2          101 of 102

1   firm and any party litigant in this matter, nor is there any

2   such relationship between myself and a party litigant in this

3   matter; that I am not related to counsel or to any of the

4   parties hereto, I am in no manner associated with counsel for

5   any of the interested parties to this litigation, and I am in

6   no way concerned with the outcome thereof.

7       West Monroe, Louisiana, on this the 7th day of

8   November, 2017.

9

10

11

12   WANDA J. EADY, CCR
      STATE OF LOUISIANA
13   CERTIFICATE NO. 87255

14

15

16

17

18

19

20

21

22

23

24

25

*Linda Perot, CCR*

105 Comanche Circle, West Monroe, LA 71291-7094  Tel. 318-348-7647  acourtreporter2@gmail.com

Exhibit 2        102 of 102