UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

**BOBBIE N. HINSON**  **CIVIL ACTION NO. 1:16-cv-1009**

**VERSUS**  **JUDGE DEE D DRELL**

**CONCORDIA PARISH**  **MAGISTRATE JUDGE JOSEPH H L**
**SCHOOL BOARD**  **PEREZ-MONTES**

**CONCORDIA PARISH SCHOOL BOARD'S REPLY TO**
**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

### I. INTRODUCTION

Concordia Parish School Board (the "School Board") respectfully files this memorandum in support of its motion for summary judgment (Document No. 18) and in reply to the opposition filed by plaintiff, Bobbie N. Hinson ("Ms. Hinson"), on December 22, 2017. (Document No. 20). Ms. Hinson cannot refute the evidence that the School Board's employment decisions at issue were well-founded on facts wholly unrelated to any alleged disability. Nothing proffered by Ms. Hinson in her opposition is sufficient to establish the existence of a genuine dispute as to any material fact with respect to her claims of disability discrimination, retaliation and failure to accommodate under either federal or state law. As a result, the School Board remains entitled to summary judgment.

### II. LAW AND ANALYSIS

Ms. Hinson incorrectly cites the July 1, 2015 effective date of her transfer to Ferriday Junior High School ("FJH"), as the operative date for her claims under the ADA and LEDL. Dr. Nelson made the decision to transfer Ms. Hinson and multiple other principals and vice principals well

before July 1, 2015. In fact, Dr. Nelson informed Ms. Hinson of her transfer to FJH in May 2015.[1] Likewise, Dr. Nelson announced Ms. Hinson's transfer at a school board meeting on May 21, 2017.[2] As a result, Dr. Nelson's alleged knowledge, state of mind or "animus" at least one month after he made and announced his decision to transfer Ms. Hinson (and three other principals) is simply not relevant for purposes of Ms. Hinson's disparate treatment disability discrimination claims.[3]

Even if July 1, 2015, were the operative date for Ms. Hinson's claims, there is simply no evidence that Dr. Nelson had any knowledge that Ms. Hinson suffered from any disability or resulting limitations at that time. Dr. Nelson's knowledge that Ms. Hinson may have undergone surgery over a year earlier does not equate to his knowledge that Ms. Hinson suffered from an alleged disability. Further, after her surgery, Ms. Hinson returned to school for the start of the 2014-2015 school year and assumed her regular duties. Dr. Nelson witnessed Ms. Hinson fulfilling her duties, and there was no evidence to suggest that Ms. Hinson was otherwise limited in the performance of her work or that her surgery was for a disabling condition.[4] Ms. Hinson had even stopped wearing a surgical shoe or any other visible mobility device for several months prior to Dr. Nelson's decision to transfer her employment.[5]

---

[1] Deposition of Bobbie N. Hinson, p. 104, lines:4-8 (July 18, 2017).

[2] Deposition of Paul E. Nelson, Exhibit 17 (July 18, 2017).

[3] Potentially recognizing that the July 1, 2015 effective date is not determinative, Ms. Hinson also refers to her May 2015 "transfer" at several points throughout her opposition. (Document No.. 20, p. 12, 22).

[4] Deposition of Dr. Paul E. Nelson, p. 31, lines: 15-20.

[5] The School Board was only notified of Ms. Hinson's surgery in 2014 and a handful of other doctor's appointments during the 2014-2015 school year. The School Board was never provided any of Ms. Hinson's medical records, and it had no information that Ms. Hinson's medical treatment was in any way related to an alleged disability. Moreover, the School Board clearly had no knowledge of any other surgeries or treatment Ms. Hinson underwent *after her voluntary retirement*. Put simply, Ms. Hinson had no "record of impairment" with the School Board, and the School Board had no basis on which to regard Ms. Hinson as disabled.

Likewise, any knowledge that Dr. Nelson may have had that Ms. Hinson allegedly missed school for doctors' visits during the 2014-2015 school year does not show that Dr. Nelson had any knowledge of an alleged disability. For instance, Ms. Hinson offers no evidence to show that Dr. Nelson knew or should have known that her sporadic absences for nondescript medical appointments were in any way necessitated by a disabling condition.[6] Stated otherwise, there is no evidence to show that Dr. Nelson knew or should have known that Ms. Hinson's medical appointments were different from any number of routine medical appointments by other personnel of the District.

Even after Dr. Nelson communicated his decision, Ms. Hinson failed to provide Dr. Nelson with any notice that she suffered from an alleged disability. Rather, Ms. Hinson simply refused to accept the transfer and refused to supervise any extra-curricular activities. At most, Ms. Hinson later communicated that she did not want to supervise extra-curricular and extended day activities due to unspecified "health issues" and "overall health concerns."[7] Nevertheless, such ambiguous claims were far from sufficient to notify the School Board that Ms. Hinson suffered from any disability or resulting limitations or that she needed any accommodation.

Rather than receiving any notice of a disability, Dr. Nelson was met with Ms. Hinson's insubordination. Faced with this lack of notice and defiance by an employee of the School Board, Dr. Nelson was left with no choice but to provide the May 21, 2017 correspondence directing Ms. Hinson to comply with her job responsibilities as principal.[8] As a result, none of the correspondence

---

[6] The portions of Dr. Nelson's deposition cited in Footnote 15 of Ms. Hinson's opposition actually establish that Dr. Nelson did not know or understand that any of Ms. Hinson's physical therapy or other medical appointments were related in any manner to her foot or any other alleged condition. *See*, Deposition of Dr. Paul E. Nelson, p. 39, lines: 12-14.

[7] *Id.* at Exhibit 19.

[8] *Id.* at Exhibit 16.

3

cited by Ms. Hinson in her opposition creates a genuine issue of material fact as to Ms. Hinson's disability discrimination claims.

Furthermore, Ms. Hinson cannot establish that any of the School Board's proffered reasons for her transfer were pretext for unlawful discrimination. According to Ms. Hinson, should the School Board have really focused on her qualifications, it would have simply allowed her to remain at Ferriday Lower Elementary School ("FLE"). Nevertheless, this argument necessarily fails due the fact that Ms. Hinson's qualifications were one of several non-discriminatory reasons relied upon by Dr. Nelson in transferring her employment. For instance, Ms. Hinson's argument omits the fact that Dr. Nelson was also attempting to address FLE's "toxic" employment environment.

The undisputed evidence shows that Ms. Hinson's strong disciplinary nature and leadership style, which would benefit FJH, caused problems with parents, teachers and staff at FLE. Ms. Hinson's leadership style and aggressive personality also generated complaints from local community leaders. As a result, Dr. Nelson took these issues into consideration and determined that Ms. Hinson's skill set would best serve FJH. Similarly, Dr. Nelson also needed to transfer a different principal into Ms. Hinson's previous position at FLE to repair relationships between the schools's administration and its staff and teachers. Ms. Hinson has come forward with no evidence to rebut each of these legitimate, non-discriminatory reasons for her transfer.

As with her disparate treatment disability discrimination claims, Ms. Hinson cannot support her failure to accommodate claims under the undisputed facts of this action. Ms. Hinson's opposition consists of arguments based primarily on unsupported assertions and conjecture concerning her alleged physical limitations and her inability to perform the supervisory functions of her new position. Nevertheless, Ms. Hinson never even tried to perform any of the duties required as FJH's

4

principal. Further, even assuming that Ms. Hinson was disabled under the ADA, she never provided the School Board with any knowledge of her alleged disability, and she wholly failed to interact with the School Board in determining what–*if any*–reasonable accommodations were available. Nothing in Ms. Hinson's opposition raises any genuine issue as to these material facts.

For instance, the May 29, 2015 email cited in Ms. Hinson's opposition is insufficient to establish a failure to accommodate claim. As set discussed above, this email simply refers to Ms. Hinson's alleged "health issues" and "overall health concerns." These vague statements do not notify Dr. Nelson and the School Board of any alleged disability for purposes of Ms. Hinson's failure to accommodate claim.[9]

Ms. Hinson attempts to bolster this deficient email by claiming that Dr. Nelson's response indicated that her alleged condition presented a "problem" and that she needed to fulfill the duties assigned to her. Nevertheless, Ms. Hinson's argument presents an unfair representation of several responses by Dr. Nelson. For instance, Dr. Nelson's reply that Ms. Hinson must fulfill the duties of her position first came in response to her outright refusal to accept her transfer to FJH and the duties of her new assigned position, without referencing any alleged disability whatsoever.[10]

Likewise, Dr. Nelson was responding to Ms. Hinson's request for extended sick leave due to an unspecified medical condition, when he indicated that her ***absence*** would "present a problem."[11] It was this leave over the summer that Dr. Nelson indicated would present a problem; Dr. Nelson was not responding to a notice of any specific medical condition, disability or requested

---

[9] *See*, *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996).

[10] Deposition of Paul Nelson, Exhibit 16.

[11] Id. at Exhibits 18-20. At the time of Dr. Nelson's response, Ms. Hinson's physician, Dr. Dennis LaRavia, had refused to provide the School Board with any information concerning Ms. Hinson's alleged condition.

accommodation when this comment was made. Further, Dr. Nelson approved of Ms. Hinson's sick leave, despite his comment. As a result, there is simply no indication that this comment or response was in any way a refusal to accommodate limitations from a known disability. In fact, it was Ms. Hinson who unilaterally withdrew from any discussion concerning accommodations by retiring shortly after her oblique reference to her "health issues" and "overall health concerns."[12]

Finally, Ms. Hinson grossly misconstrues the language of School Board Policy GBRE entitled "Extra Duty," in an attempt to support her failure to accommodate claims. This "Extra Duty" policy requires principals to assign extra-curricular duties, such as lunch duty or bus duty, among their teachers and staff.[13] As noted by Dr. Nelson, this policy both provides the basis for a principal to require a teacher to perform duties beyond teaching, and it assures that a principal may not force the same teachers or staff in their school to perform duty.[14] Stated otherwise, the "Extra Duty" policy allows for the equitable distribution of extra-curricular supervision requirements.

While the "Extra Duty" policy provides a principal with help in supervising their school, nothing in the policy allows a principal to abdicate their duty of supervision, as suggested by Ms. Hinson. In fact, the "Extra Duty" policy expressly provides that supervision of a school is a principal's responsibility. This responsibility includes supervision of extra-curricular activities, and it remains a key part of a principal's job duties. As established in detailed by Dr. Nelson, there is a provision in all principal contracts, requiring the performance of any additional duties as assigned

---

[12] Id. at Exhibits 19, 24.

[13] Id. at Exhibit 11.

[14] Id. at p. 83, lines: 21-25; p. 84, lines: 1-15.

by the superintendent.[15] As supervision is an essential function of the job of principal, a fact repeatedly recognized in the "Extra Duty" policy, Dr. Nelson and other superintendents serving the School Board have long required their principals to be present and supervise extra-curricular events at their schools. This supervision is such an essential function of the job that the School Board pays a stipend to junior high school and high school principals to cover these additional, required duties.[16]

The School Board in no way admits that Ms. Hinson needed accommodation or that Dr. Nelson reversing his decision to transfer Ms. Hinson was in any way a reasonable accommodation.[17] Any accommodation requiring Dr. Nelson to reverse his across-the-district transfers would be unreasonable. By its very nature, such a proposed accommodation would require the removal and re-transfer of additional employees. Likewise, any accommodation requiring other employees to perform the essential supervisory functions of Ms. Hinson's job are necessarily unreasonable and insufficient to establish Ms. Hinson's failure to accommodate claims.

### III. CONCLUSION

For the foregoing reasons, as well as those developed more fully in the School Board's original motion (Document No. 18), the Court should grant summary judgment and dismiss all claims and demands asserted by Ms. Hinson herein with prejudice and at her sole cost.

---

[15] Id. at p. 79, lines: 3-6; p. 85, lines: 5-11.

[16] The deposition testimony of Arlana Davis, former Principal of Ferriday Junior High School, also establishes that it was an essential function of the job of junior high school principal to provide supervision of extra-curricular events. (Deposition of Arlana Davis, p. 10, lines: 13-14; p. 24, lines:5-7 (Aug. 4, 2017)).

[17] In her opposition, Ms. Hinson cites to the School Board's stipulation during Dr. Nelson's deposition that Dr. Nelson had the legal authority as Superintendent of the School Board to transfer Ms. Hinson's employment back to FLE. (Doc. 20, p. 7); *See also*, Deposition of Dr. Paul E. Nelson, p. 121, lines: 1-12. Nevertheless, the School Board ***did not*** stipulate or agree that such a re-transfer was necessary or a reasonable accommodation for Ms. Hinson.

        Respectfully submitted,

        HAMMONDS, SILLS, ADKINS & GUICE, LLP
        1881 Hudson Circle
        Monroe, Louisiana 71201
        Telephone: (318) 324-0101
        Facsimile: (318) 322-5375

        By: */s/ Justin N. Myers*
            Neal L. Johnson, Jr., Bar No. 23149
            Jon K. Guice, Bar No. 20841
            Justin N. Myers, Bar No. 34005

        ATTORNEYS FOR CONCORDIA PARISH SCHOOL BOARD

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing *Concordia Parish School Board's Reply to Opposition to Motion for Summary Judgment* was provided to plaintiff's trial attorney, Michael L. DuBos, by depositing same in the United States mail with sufficient postage affixed thereto and properly addressed to him at 1811 Tower Drive, Suite D, Monroe, Louisiana 71201.

Monroe, Louisiana, this 29th day of December 2017.

        */s/ Justin N. Myers*
        OF COUNSEL